# GUTIERRES v. ALBUQUERQUE LAND AND IRRIGATION COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 16. Argued January 9, 1902—Decided February 23, 1903.

1. The provisions of the corporation laws of the Territory of New Mexico relating to the formation and rights of irrigation companies are not invalid because they assume to dispose of property of the United States without its consent. By the act of July 26, 1866, 14 Stat. 253; .Rev. Stat. § 2339, and the act of March 3, 1877, 19 Stat. 377, Congress recognized as respects the public domain and so far as the United States is concerned, the validity of the local customs, laws and decisions in respect to the appropriation of water, and granted the right to appropriate such amount of water as might be necessarily used for the purpose of irrigation and reclamation of desert land, part of the public-domain, and as to the surplus, the right of the public to use the same for irrigation, mining and manufacturing purposes subject to existing rights. The purpose of Congress to recognize the legislation of Territories as well as of States in respect to the regulation of the use of public water is evidenced by the act of March 3, 1891, 26 Stat. 1095. The statute of New Mexico is not inconsistent with the legislation of Congress on this subject.

2. The act of March 3, 1877, is not to be construed as an expression of Congress that the surplus public waters on the public domain, and which are within the control of Congress or of a legislative body created by it, must be directly appropriated by the owners of lands upon which a beneficial use of the water is to be made and that consequently a territorial legislature cannot lawfully empower a corporation to become an intermediary for furnishing water to irrigate the lands of third parties.

VOL. CLXXXVIII—35

The question whether the appropriation of water interferes with the rights
of other appropriators below the mouth of a proposed new irrigation canal
cannot be raised by parties who are strangers to such other appropriators
not parties to the action.

THIS litigation was begun by the appellee, in the District
Court for the Second Judicial District of the Territory of New
Mexico, within and for the county of Bernalillo. In the bill
of complaint equitable relief was sought against the now appel-
lants. It was alleged, in substance, that plaintiff, on Decem-
ber 31, 1897, became a body corporate, pursuant to the provi-
sions of an act of the general assembly of the Territory of New
Mexico, approved February 24, 1887, for the purpose of con-
structing a canal, ditch and pipe line between named points in
the county of Bernalillo, in the Territory of New Mexico; that,
as preliminary to the construction of such canal, ditch and pipe
line, a survey of lands along the proposed route thereof was
necessary, and such survey was authorized by law; and that
the defendants, asserting ownership of lands along such proposed
route, had forcibly prevented the employés of the plaintiff from
entering on said lands to make survey thereof. It was prayed
that temporarily, pending the suit, and perpetually by the final
decree, the defendants might be enjoined from further interfer-
ence with the making of the survey, and there was also a prayer
for general relief. In their answer the defendants admitted
their interferences with the proposed survey, as complained of
in the bill, but asserted their right to do so. Reiterating the
allegations of the answer, by cross complaint, a perpetual in-
junction was asked restraining entry by the plaintiff upon the
lands. An order was issued temporarily restraining the de-
fendants, as prayed, and thereafter a demurrer to the answer
and cross complaint of the defendant was filed and overruled.
After replication by the respective parties the cause was trans-
ferred to the District Court of the First Judicial District for
the Territory of New Mexico, within and for the county of
Santa Fé. In that court trial was had and judgment was en-
tered in favor of the plaintiff perpetuating the preliminary in-
junction and dismissing the cross complaint of the defendants.

The following findings of fact and conclusions of law were embodied in the judgment :

## " *Findings of Fact.*

" I. That the plaintiff is a corporation and has complied with the provisions of the laws of the Territory of New Mexico. It is organized for the purpose of constructing a canal from a point on the Rio Grande about twenty-eight miles above the city of Albuquerque to the railroad bridge across said Rio Grande, at Isleta, the initial and terminal points of said canal being within the county of Bernalillo.

" II. That the headgate of plaintiff's proposed canal is to be at a point on the Rio Grande three eighths (⅜) of a mile below or south of the Indian village of San Felipe, about twenty-eight miles above the city of Albuquerque ; that the ultimate terminus or point of discharge into the river is at the railroad bridge near Isleta, the entire length of the canal to be about thirty-five (35) miles. The present proposed terminus is at the city of Albuquerque.

" III. That the engineer of the company was proceeding with a survey of the line between Albuquerque and the headgate when defendants interfered with and obstructed the said engineer in the making of said survey.

" IV. That the capacity of the said proposed canal is two hundred and ten (210) cubic feet of water per second.

" V. That there are at present thirteen ditches taking water from the river between the proposed headgate of plaintiff's canal and the Albuquerque, and seven between Albuquerque and the Indian town of Isleta.

" VI. That the aggregate capacity of all the said old ditches is four hundred and ninety-eight (498) cubic feet per second, and the court finds that there has been a valid prior appropriation by the owners of said old ditches of the said four hundred and ninety-eight (498) feet per second of water.

" VII. That during a few months or parts of the summer months of the years 1894, 1895, 1896 and 1897 there was no surplus water flowing in the river at the proposed headgate, but during a large majority of the months of each of these years

there was a large amount of surplus water flowing past that point, and that those years were the only years within ten or twenty years in which the river was dry at or above Albuquerque.

" VIII. That in a majority of the last ten years there has been surplus water flowing in the said river at the proposed headgate at all times.

" IX. That the river became dry at Albuquerque about the last of June, 1894, and remained so for twenty-two days, and also in June, 1896, for a number of days, the court being unable to find the exact number or length of time from the evidence.

" X. That the months of June, July, August and September are the ' dry season.'

" XI. That the planting and growing season in the Rio Grande Valley begins in February and ends with October.

" XII. That very few farmers served by the present ditches sow wheat, oats, barley or rye in the fall of the year, but do so in the spring, beginning during February or March and that very little, if any, of the water now appropriated is used for these crops after June 15th, but the water is used for chili, corn, alfalfa and melons after that time, and for alfalfa as late as October.

" XIII. That for all the months in most years and for most of the months in every year there is a surplus of water flowing in the Rio Grande over and above the amount appropriated by said old ditches.

" XIV. The court finds that there is no evidence that plaintiff relies on any source of water supply than the Rio Grande or that the proposed canal of plaintiff is expected or intended to receive and distribute stored waters.

" XV. That the plaintiff is not the owner of any lands along the line of its proposed canal or elsewhere.

" XVI. That there is no evidence that plaintiff has any contract with or employment by any person who is the owner of lands irrigable from said proposed canal for the conduct of water upon any such lands, or that any owner of lands not now irrigated from existing acequias, desires or intends to irrigate such lands from plaintiff's canal when completed.

" XVII. That the proposed canal of the plaintiff will cross and recross the existing acequias of Bernalillo nine times within a distance of one mile of its length.

" XVIII. That some of the defendants and some of their associates are the owners of lands through which the plaintiff proposes to construct its canal.

## " *Conclusions of Law.*

" I. That the plaintiff corporation is entitled to exercise the power of eminent domain.

" II. That the plaintiff, by the filing of its articles of incorporation with the secretary of the Territory of New Mexico, and complying with the provisions of the act under which it is incorporated, has acquired a right to construct its canals and reservoirs to divert through its proposed canal surplus and unappropriated waters flowing in the Rio Grande, and that such a right of eminent domain does not depend upon the ownership of lands by plaintiff or the employment of plaintiff prior to the construction of its canal by owners of lands to carry waters for such owners

" III. That the defendants, at the time of the filing of the complaint herein, unlawfully obstructed the plaintiff in the exercise of powers lawfully conferred upon it by the act under which it is incorporated.

" IV. That the defendants do not and cannot in this action lawfully represent the rights of such persons claiming a right to the use of the waters of the Rio Grande, by prior appropriation, when the appropriation of such persons was effected at a point below the mouth of the proposed canal of plaintiff.

" V. That the defendants cannot lawfully set up in this action any rights secured to them and their associates or their predecessors in title by the treaty of Guadalupe Hidalgo, and that the allegations of paragraph ten of the answer of defendants with reference to the treaty of defendants are immaterial.

" VI. That the plaintiff is entitled to the relief demanded in the complaint, including a perpetual injunction as prayed for.

" VII. That defendants are not entitled to any part of the

relief demanded in their cross complaint, but the same should be dismissed."

A motion to set aside the findings and judgment and for a new trial having been overruled, the cause was taken to the Supreme Court of the Territory. That court affirmed the judgment of the trial court and adopted as its own the findings of fact made by the judge of the District Court. Thereupon this appeal was allowed.

*Mr. Neill B. Field* for appellants.

*Mr. William B. Childers* for appellee.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The pertinent portions of the territorial act of February 24, 1887, under which the plaintiff below was incorporated, are noted in the margin.[1]

---

[1] Corporation Laws of New Mexico, 1897.

§ 468. Any five persons who may desire to form a company for the purpose of constructing and maintaining reservoirs and canals, or ditches and pipe lines, for the purpose of supplying water for the purpose of irrigation, mining, manufacturing, domestic and other public uses, including cities and towns, and for the purpose of colonization and the improvement of lands in connection therewith, for either or both of said objects, either jointly or separately, shall make and sign articles of incorporation, which shall be acknowledged before the secretary of the Territory, or some person authorized by law to take the acknowledgment of conveyances of real estate, and when so acknowledged, such articles shall be filed with such secretary.

§ 469. Such articles shall set forth: First. The full names of the incorporators, and the corporate name of such company.

Second. The purpose or purposes for which such company is formed, and if the object be to construct reservoirs and canals, or ditches and pipe lines for any of the purposes herein specified, the beginning point and terminus of the main line of such canals and ditches and pipe lines, and the general course, direction and length thereof shall be stated.

Third. The amount of the capital stock and the number of shares as definitely as practicable.

Fourth. The term of existence of the company, which shall not exceed fifty years.

It will be seen that the act authorized the formation of corporations for the purpose of constructing and maintaining reservoirs and canals, or ditches and pipe lines, and that two pur-

Fifth. The number of directors, and the names of those who shall manage the business of the company for the first year.

Sixth. The name of the city or town and county in which the principal place of business of the company is to be located.

\*     \*     \*     \*     \*     \*     \*     \*

§ 484. Corporations formed under this act for the purpose of furnishing and supplying water for any of the purposes mentioned in section four hundred and sixty-eight, shall have, in addition to the powers hereinbefore mentioned, rights as follows:

First. To cause such examinations and surveys for their proposed reservoirs, canals, pipe lines and ditches to be made, as may be necessary to the selection of the most eligible locations and advantageous routes, and for such purpose, by their officers, agents and servants, to enter upon the lands or water of any person, or of this Territory.

Second. To take and hold such voluntary grant of real estate and other property, as shall be made to them in furtherance of the purposes of such corporation.

Third. To construct their canals, pipe lines or ditches upon or along any stream of water.

Fourth. To take and divert from any stream, lake or spring the surplus water, for the purpose of supplying the same to persons, to be used for the objects mentioned in section four hundred and sixty-eight of this act, but such corporations shall have no right to interfere with the rights of, or appropriate the property of any persons except upon the payment of the assessed value thereof, to be ascertained as in this act provided. *And provided, further,* That no water shall be diverted if it will interfere with the reasonable requirements of any person or persons using or requiring the same, when so diverted.

Fifth. To furnish water for the purposes mentioned in section four hundred and sixty-eight, at such rates as the by-laws may prescribe; but equal rates shall be conceded to each class of consumers.

Sixth. To enter upon and condemn and appropriate any lands, timber, stone, gravel, or other material that may be necessary for the uses and purposes of said companies.

\*     \*     \*     \*     \*     \*     \*     .\*

§ 492. That no incorporation of any company or companies to supply water for the purposes of irrigation and other purposes, shall have any right to divert the usual and natural flow of water of any stream which by the law of 1854 has been declared a public acequia for any use whatever, between the fifteenth day of February and the fifteenth day of October of each year, unless it be with the unanimous consent of all and every person holding agricultural and cultivated lands under such stream or public

poses were to be subserved by the formation of such companies, 1, the supplying of water for irrigation, mining, manufacturing, domestic and other public uses, including cities and towns; and, 2, the colonization and the improvement of lands in connection therewith. The articles of association of the appellee set out the second of the aforesaid objects as being the purpose for which the company was formed. The organization of the company in conformity to the requirements of the statute is not questioned, and the existence of surplus water over and above the needs of prior appropriators of water at the point where it was proposed to divert the waters of the Rio Grande for the proposed canal is a fact found by the trial court and not disputed either in the Supreme Court of the Territory or in the argument made at bar.

The contentions urged upon our notice substantially resolve themselves into two general propositions: First, that the territorial act was invalid, because it assumed to dispose of property of the United States without its consent; and, second, that said statute, in so far at least as it authorized the formation of corporations of the character of the complainant, was inconsistent with the legislation of Congress and therefore void. These propositions naturally admit of consideration together.

The argument in support of the first proposition proceeds upon the hypothesis that the waters affected by the statute are public waters, the property not of the Territory or of private individuals, but of the United States; that by the statute private individuals, or corporations, for their mere pecuniary profit, are permitted to acquire the unappropriated portion of such public waters, in violation of the right of the United States to control and dispose of its own property wheresoever situated. Assuming that the appellants are entitled to urge the objection referred to, we think, in view of the legislation of Congress on the subject of the appropriation of water on the public domain,

acequia, and to be irrigated by the water furnished by said stream or public acequia, and that no incorporation of any company or companies shall interfere with the water rights of any individual or company, acquired prior to the passage of this act.

particularly referred to in the opinion of this court in *United States* v. *Rio Grande Irrigation Co.*, 174 U. S. 690, 704–706, the objection is devoid of merit. As stated in the opinion just referred to, by the act of July 26, 1866, c. 262, sec. 9, 14 Stat. 253 ; Rev. Stat. sec. 2339, Congress recognized, as respects the public domain, " so far as the United States are concerned, the validity of the local customs, law and decisions of courts in respect to the appropriation of water." By the act of March 3, 1877, c. 107, 19 Stat. 377, the right to appropriate such an amount of water as might be necessarily used for the purpose of irrigation and reclamation of desert land, part of the public domain, was granted, and it was further provided that " all surplus water over and above such actual appropriation and use, together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights."

That the purpose of Congress was to recognize as well the legislation of a Territory as of a State with respect to the regulation of the use of public waters is evidenced by the act of March 3, 1891, c. 561, 26 Stat. 1095. By the eighteenth section of the act of 1891 it was provided as follows :

" Sec. 18. That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation and duly organized under the laws of any State or Territory, which shall have filed, or may hereafter file, with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof ; also the right to take from the public lands adjacent to the line of the canal or ditch, material, earth, and stone necessary for the construction of such canal or ditch : *Provided*, That no such right of way shall be so located as to interfere with the proper occupation by the government of any

such reservation, and all maps of location shall be subject to the approval of the department of the government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective States or Territories."

It may be observed that the purport of the previous acts is reflexively illustrated by the act of June 17, 1902, 32 Stat. 388. That act appropriated the receipts from the sale and disposal of the public lands in certain States and Territories to the construction of irrigation works for the reclamation of arid lands. The eighth section of the act is as follows:·

"SEC. 8. That nothing in this act shall be construed as affecting or intending to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof: *Provided*, That the right to the use of water acquired under the provisions of this act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right."

It would necessarily seem to follow from the legislation referred to that the statute which we have been considering is not inconsistent with the legislation of Congress on the subject of the disposal of waters flowing over the public domain of the United States. Of course, as held in the *Rio Grande* case, · (p. 703), even a State, as respects streams within its borders, in the absence of specific authority from Congress, "cannot by its legislation destroy the right of the United States, as the owner of lands bordering on a stream, to the continued flow of its waters; so far at least as may be necessary for the beneficial uses of the government property," and the power of a State over navigable streams and their tributaries is further limited by the

superior power of the general government to secure the uninterrupted navigability of all navigable streams within the limits of the United States. Necessarily, these limitations are equally applicable in restraint of the legislative branch of a territorial government, controlled, as is such body, by Congress. If we assume that a restriction on the power of a Territory similar to that first stated prevails in favor of private owners of lands along a running stream, the act in question clearly is not violative of such rights, for the same does not attempt to authorize an infringement of them. The water which it is provided may be appropriated is "surplus" water, of any stream, lake or spring, and it is specifically provided in subdivision 4 of section 17 of the act "That no water shall be diverted, if it will interfere with the reasonable requirements of any person or persons using or requiring the same, when so diverted." So, also, in section 25, it is declared "that no incorporation of any company or companies shall interfere with the water rights of any individual or company, acquired prior to the passage of this act." The finding of the court below that "surplus" water existed negates the idea that any legitimate appropriation of water which can be made by the appellee can in anywise violate the rights of others.

We perceive no merit in the contention that the proviso in the desert land act of March 3, 1877, declaring that surplus water on the public domain shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes, subject to existing rights, is an expression of the will of Congress that all public waters within its control or the control of a legislative body of its creation, must be *directly* appropriated by the owners of land upon which a beneficial use of water is to be made, and that in consequence a territorial legislature cannot lawfully empower a corporation, such as the appellee, to become an intermediary for furnishing water to irrigate the lands of third parties. As all owners of land within the service capacity of appellee's canal will possess the right to use the water which may be diverted into such canal, the use is clearly public, *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 163, and appellee is therefore a public

agency, whose right to divert water and whose continued existence is dependent upon the application by it within a reasonable time of such diverted water to a beneficial use. Irrigation corporations generally are recognized in the legislation of Congress, and the rights conferred are not limited to such corporations as are mere combinations of owners of irrigable land.

It is conceded on behalf of appellant that, by the laws of Mexico in force when the Territory of New Mexico was ceded to the United States, the use of the waters of both navigable and unnavigable streams was not limited to riparian lands, but extended as well to lands which did not lie upon the banks of the rivers, and that such use was subject to be regulated and controlled by the public authorities. It is however contended that the effect of the statute under consideration is to free the waters from public control and to transfer them to private control, a position which is manifestly unsound, in view of the public nature of such corporations and their liability to regulation by the legislative authority which has in effect created them. The concession above referred to and the implication arising from the statement in the answer and cross bill to the purport that the title of the defendants to their lands was derived, mediately or immediately, from those who held title thereto at the time of the acquisition of New Mexico by the United States, coupled with the finding by the trial court that, after making all due allowances for valid appropriations of water within the portion of the Rio Grande directly affected by the canal of the appellee, there yet existed a surplus of unappropriated water, warranted the trial court in treating as immaterial the claim asserted in the tenth paragraph of the answer of the defendants to the effect that, by the treaty of cession of New Mexico to the United States, the defendants and their associates acquired the right of user of all the waters of the Rio Grande adjacent to their lands. Neither do we think that the trial court was called upon, at the instance of the defendants, entire strangers in every aspect to other appropriators, to inquire into and pass upon the question whether appropriators of water below the mouth of the proposed canal of appellee would be injured by the construction of the canal. The rights of such per-

sons will not, of course, be injuriously affected by the decree in this cause, and *non constat* but that. they may yet intervene for their own protection, if they deem'that the construction of the canal will be an invasion of their rights, or that they may be willing to forego objection to the construction of the canal.

On the whole, we are of the opinion that the decree of the Supreme Court of the Territory of New Mexico was correct, and it is therefore

*Affirmed.*

MR. JUSTICE MCKENNA dissents.