# BOQUILLAS LAND AND CATTLE COMPANY *v.* CURTIS.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 133.   Argued April 7, 1909.—Decided April 19, 1909.

Under § 3198, Rev. Stat. of Arizona of 1887, the common-law doctrine of riparian rights does not now obtain in that Territory, and, as held by the Supreme Court of the Territory, the doctrine of appropriation was recognized and to some extent in force prior to and since 1833 in the State of Sonora now a part of that Territory.

Confirmation of an estate does not enlarge it, and where the original
    Mexican title did not carry riparian rights the mere confirmation
    thereof by the United States does not give such rights to the confirmee.
The legislative act of Arizona, Howell's Code of 1864, c. 61, § 7, adopting
    the common law of England was merely the adoption of a general
    system of law in place of the Spanish Mexican general system which
    was simultaneously repealed, and the regulation of and rights to water
    were by the same act made subject to the natural and physical con-
    dition of the Territory and the necessities of its people; and this court
    sustains the Supreme Court of the Territory in its interpretations of
    the qualifications imposed on the general adoption of the common
    law in respect to the use of water.
The right to use water is not confined under the customary law of Ari-
    zona to the riparian proprietors.    Where the riparian proprietor is
    entitled under a general statute to have the damages to his land taken
    for withdrawal of water by appropriators assessed, the decree below
    will not be disturbed because no provision was made for compensa-
    tion, it appearing in this case that the objection was technical and the
    point was not discussed below
89 Pac. Rep. 504, affirmed.


THE facts are stated in the opinion.


*Mr. Eugene S. Ives* for appellant:

Riparian rights once vested are property rights and cannot
be taken away except by the exercise of the right of emi-
nent domain.    Long on Irrigation, § 12; Black's Pomeroy
on Water Rights, § 9; *Lux* v. *Haggin,* 69 California, 255; *Sturr*
v. *Beck,* 133 U. S. 541; 1 Farnham on Water Rights, 282;
*Benton* v. *Johncox,* 17 Washington, 277; *S. C.,* 39 L. R. A.
107; 61 Am. St. Rep. 912; *Clark v. Cambridge &c. Co.,* 45 Ne-
braska, 798; *S. C.,* 64 N. W. Rep. 239; *Yates* v. *Milwaukee,*
10 Wall. 497; *Potomac Steamboat Co.* v. *Upper Potomac Steam-
boat Co.,* 109 U. S. 672; *Delaplaine* v. *Railway Co.,* 42 Wis-
consin, 214; *Belle* v. *Gough,* 23 N. J. Law, 624; *Water Co.* v.
*Raff,* 36 N. J. Law, 635; *Crawford Co.* v. *Hathaway,* 67 Ne-
braska, 325; *Bigelow* v. *Draper,* 6 N. Dak. 152; *S. C.,* 69 N. W.
Rep. 570.

Appellant's ownership within the Mexican grant having been

continucus since the date of the grant the patent operated as a consummation of such title, and also as a quit-claim of whatever interest the United States acquired by the cession. *Beard* v. *Federy,* 3 Wall. 478; *Knight* v. *Land Association,* 142 U. S. 161; *Herrick* v. *Boquillas Land Co.,* 200 U. S. 96; *Sturr* v. *Beck,* 133 U. S. 541; *Shepley* v. *Cowan,* 91 U. S. 330.

The patent issued by the United States conveyed to the appellant all rights which the United States may have had in the waters of the San Pedro River. Revised Statutes U. S., §§ 2339, 2340.

The effect of these statutes has been definitely settled by this court, and the conclusion reached is that the provisions quoted were a voluntary recognition of a preëxisting right of possession, constituting a valid claim to the continued use and not the establishment of a new one. *Broder* v. *Water Co.,* 101 U. S. 274; *Atchison* v. *Peterson,* 20 Wall. 507; *Basey* v. *Gallagher,* 20 Wall. 670.

The common law doctrine of riparian rights was adopted by the first legislature of Arizona in the code of laws known as the Howell Code. Article 22, Bill of Rights, Howell's Code; Howell's Code, Chapter 55, §§ 1, 2, 3, 4, 5, 7, 17, 25.

The provisions of the Howell Code are not inconsistent with or repugnant to the rights of the riparian proprietor at common law. *Crawford Co.* v. *Hathaway,* 67 Nebraska, 325; S. C., 93 N. W. Rep. 781; *Thorpe* v. *Tenem Ditch Co.,* 1 Washington, 566; *Ellis* v. *Pomeroy Improv. Co.,* 1 Washington, 572; *Geddis* v. *Parrish,* 1 Washington, 587; *Crook* v. *Hewitt,* 4 Washington, 749; *Rigney* v. *Tacoma Light & W. Co.,* 9 Washington, 576; *Isaacs* v. *Barber,* 10 Washington, 124; *Benton* v. *Johncox,* 17 Washington, 277; *Lone Tree Ditch Co.* v. *Cyclone Ditch Co.,* 15 S. D. 519.

Under the Mexican law the right of a riparian owner to the use of water was superior to that of a subsequent appropriator. Such right was preserved and guaranteed by the treaty of cession and could not afterwards be affected by territorial legislation. Kinney on Irrigation, § 292.

*Mr. H. L. Pickett* and *Mr. Ben Goodrich,* for appellees, submitted:

The common law doctrine of riparian rights does not prevail. in Arizona in favor of the owners of land derived by grant from the State of Sonora prior to the Gadsden Purchase of 1854. The provisions of the Howell Code are wholly inconsistent with the doctrine of riparian rights. *Stowell* v. *Johnson,* 26 Pac. Rep. 290; *Clough* v. *Wing,* 17 Pac. Rep. 453; *Willey* v. *Decker,* 73 Pac. Rep. 211; *Boquillas Land & Cattle Co.* v. *Curtis et al.,* 89 Pac. Rep. 504.

Even if the common law doctrine of riparian rights ever did obtain in Arizona, it was abrogated by the act of the legislature of March 10, 1887, Rev. Stat. Arizona, 1887, § 3198, which reads as follows:

"The common law doctrine of riparian water rights shall not obtain or be of any force or effect in this Territory." See *United States* v. *Rio Grande Dam & Irrigation Co.,* 174 U. S. 703.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the appellant to prevent the defendants from withdrawing water from the San Pedro River and from building for that purpose a dam and ditch upon and through the plaintiff's land. The plaintiff owns a tract extending on both sides of the river for about fourteen and one-half miles and reaching back from the river for a mile and one-eighth on each side. It derives its title from a grant of the State of Sonora in 1833, confirmed by a decree of the Court of Private Land Claims on February 14, 1899, and a patent from the United States in pursuance of the decree, dated December 14, 1900. By reason of disputes before the date of the patent and wrongful disputes since, the plaintiff has not made actual use of all the waters of the river, although they are not sufficient to irrigate all the plaintiff's land that admits of irrigation. It has constructed no dams, canals or the like, and has not taken the water except for watering stock and other similar uses of

it in its natural flow.  The defendants threaten and intend to build a dam, as alleged, in place of one built in 1903, but washed out, and to build and rebuild a ditch through land of the plaintiff to another ditch already established, and to divert the water through the same to land of theirs on the north.  They set up no title except that they have been the first to appropriate the water.  The plaintiff claims as riparian owner, and argues that as such it has a right that cannot be taken from it by simple appropriation.  The territorial court of first instance and the Supreme Court dismissed the bill, 89 Pac. Rep. 504, and the plaintiff appealed to this court.

It is not denied that what is called the common law doctrine of riparian water rights does not obtain in Arizona at the present day, Rev. Stats. Arizona, 1887, § 3198, but the plaintiff contends that it had acquired such rights before that statutory declaration, and that it cannot be deprived of them now.  So far as the claim is rested on the original grant and the Mexican law it may be disposed of in a few words, without going into all the questions that would have to be answered before an opposite conclusion could be reached.  "Whatever may have been the general law throughout the Republic of Mexico on the subject of water, it is reasonably certain that in the State of Sonora the doctrine of appropriation, as now recognized, was to some extent in force by custom.  In this Territory irrigation was practiced in the Santa Cruz Valley prior to the cession and it is well known the right of appropriation without regard to the riparian character of the lands was there in force probably from the time when the Spaniards first settled in the valley. Our statutes, as well as those of New Mexico, seem to have had their origin in the Mexican law as modified by custom."  This is the statement of the territorial court, and we know nothing to control it.  It is not met by arguments as to the general character of Mexican law, or by inference from the situation and nature of the grant.  The same doctrine seems to be implied by the Howell Code, ch. 55, § 25, which we shall refer to again.

The plaintiff draws another argument from the effect of the United States patent. It contends that the patent not only confirms the Mexican title but releases that of the United States, *Beard* v. *Federy*, 3 Wall. 478, 491, and that by the grant from the United States it gained rights as a riparian proprietor that could not be displaced by a subsequent attempt to appropriate the water. *Sturr* v. *Beck*, 133 U. S. 541. But while it is true that in *Beard* v. *Federy, sup.,* Mr. Justice Field calls such a patent a quit-claim, we think it rather should be described as a confirmation in a strict sense. "Confirmation is the approbation or assent to an estate already created, which, as far as is in the confirmer's power makes it good and valid: so that the confirmation doth not regularly create an estate; but yet such words may be mingled in the confirmation, as may create and enlarge an estate; but that is by force of such words that are foreign to the business of confirmation." Gilbert, Tenures, 75. It is not to be understood that when the United States executes a document on the footing of an earlier grant by a former sovereign it intends or purports to enlarge the grant. The statute under which the Mexican title was decided to be good speaks of confirmation throughout, and, in the most pertinent passage, directing a patent to be issued, says that it shall be issued "to the confirmee." Act of March 3, 1891, c. 539, § 10, 26 Stat. 854, 859. It would be possible, perhaps, to argue to the contrary from provisions in §§ 8 and 13, that the confirmation shall only work a release of title by the United States, but we are satisfied that the true intent of the statute and the reason of the thing are as we have said.

The opinion that we have expressed makes it unnecessary to decide whether lands in the arid regions patented after the act of March 3, 1877, c. 107, 19 Stat. 377, are not accepted subject to the rule that priority of appropriation gives priority of right by virtue of that act construed with Rev. Stat., § 2339. The Supreme Court of Oregon has rendered a decision to that effect on plausible grounds. *Hough* v. *Porter,* 98 Pac. Rep 1083. See further, act of March 3, 1891, c. 561, § 18, 26 Stat.

1101. *United States* v. *Rio Grande Dam and Irrigation Co.,* 174 U. S. 690, 704–706; *Gutierres* v. *Albuquerque Land and Irrigation Co.,* 188 U. S. 545, 553. So it is unnecessary to consider how far, if at all, the defendants represent an appropriation of the water before the patent was granted. For that reason we have not set forth the details found by the court below as to the dams, ditches and use of water, going back to 1877.

But, perhaps, the main contention of the plaintiff is based on the legislation of the Territory, and especially on the Howell Code of 1864, c. 61, § 7, as follows: "The common law of England, so far as it is not repugnant to, or inconsistent with the Constitution and laws of the United States, or the bill of rights or laws of this Territory, is hereby adopted, and shall be the rule of decision in all the courts of this Territory." We assume that this section, however it may affect the case at bar, was within the power of the legislature to enact. *United States* v. *Rio Grande Dam and Irrigation Co.,* 174 U. S. 690, 702, 703; *Gutierres* v. *Albuquerque Land and Irrigation Co.,* 188 U. S. 545, 553. Act of June 17, 1902, c. 1093, § 8. 32 Stat. 388, 390. But we agree with the territorial court that, construed with the rest of the code, it is far from meaning that patentees of a ranch on the San Pedro are to have the same rights as owners of an estate on the Thames.

In the first place, this is merely the adoption of a general system as against another general system (the Spanish Mexican), that had been in force and that was repealed by § 1. If there were nothing more in the code, it would be going a great way to say that such a broad phrase forbade the courts to hold that the common law was adaptible and established the English rule of riparian rights only for English conditions, as suggested by Nave, J., below. It might be argued, with force, that an amendment, inserting the words "So far only as is consistent with and adapted to the natural and physical condition of the Territory, and the necessities of the people thereof," merely expressed what was implied before. Rev. Stats. 1887, § 2935. And the like might be urged with regard to § 3198 of the Re-

vised Statutes of 1887, which, in terms, enacted or declared that "the common law doctrine of riparian water rights" should not obtain. But we are not left to rely upon reasonable implications and argument, for other parts of the original code are express upon the point. Therefore we need not consider whether, in any event, the statute could be supposed to confer property rights not previously possessed and not subject to legislative change. Compare *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379, 387, and *Damon* v. *Hawaii,* 194 U. S. 154, 160.

By the statutory bill of rights, Art. 22, all streams capable of being used for the purposes of irrigation are declared to be public property, and no one shall have the right to appropriate them exclusively, except under such equitable regulations as the legislature shall provide. And then chapter 55 "Of Acequias or Irrigating Canals," after again declaring streams of running water public, § 1, enacts that "All the inhabitants of this Territory who own or possess arable and irrigable lands, shall have the right to construct public or private acequias, and obtain the necessary water for the same from any convenient river, creek or stream of running water." § 3. By § 4, when such acequias run through the lands of private persons not benefited, the damages are to be assessed by the probate judge in a summary manner, on application of the party interested. § 4. Preference is given to irrigation over other uses. § 5. By § 7 the exclusive right to the water is given to the persons taking out a ditch for agricultural purposes, and a right to damages if the water afterwards is taken for mining. By § 17 precedence is given in time of scarcity to the oldest titles, and by § 25 "The regulation of acequias, which have been worked according to the laws and customs of Sonora and the usages of the people of Arizona, shall remain as they were made and used up to this day,'" and the chapter is to be enforced from the day of publication. There are many more details, but we have recited enough to show that the interpretation given by the court below to the general adoption of the common law by the Howell Code, and

the qualifications imposed upon it, were correct. They simply follow what has been understood to be the law for many years. *Clough* v. *Wing*, 2 Arizona, 371.

The right to use water is not confined to riparian proprietors. *Gutierres* v. *Albuquerque Land and Irrigation Co.*, 188 U. S. 545, 556; *Coffin* v. *Left Hand Ditch Co.*, 6 Colorado, 443, 449, 450; *Willey* v. *Decker*, 73 Pac. Rep. 210, 220. Such a limitation would substitute accident for a rule based upon economic considerations, and an effort, adequate or not, to get the greatest use from all available land. Whether there are any limits of distance is a question not arising in this case.

A final objection urged is that the plaintiff's land is taken without compensation. It would seem that this is merely technical in this case. There does not appear to have been any discussion of the point below, and it is probable that the water is the only thing that has substantial value or really is cared for. But the plaintiff is authorized to have his damages assessed if he desires by ch. 55, § 4 (now Rev. Stat., § 3202), as we have mentioned. We think that it would be unjust to disturb the decree on this ground, although in other circumstances the objection might be grave.

*Decree affirmed.*