### SNYDER v. COLORADO GOLD DREDGING CO.†

(Circuit Court of Appeals, Eighth Circuit. August 4, 1910.)

No. 2,928.

*(Syllabus by the Court.)*

1. WATERS AND WATER COURSES (§ 34*)—WATER RIGHTS—DOCTRINE OF APPROPRIATION PREVAILS IN COLORADO.

In Colorado, the common-law doctrine in respect of the rights of riparian proprietors never has obtained, and in its stead there was adopted the doctrine of appropriation which regards the waters of all natural streams as subject to appropriation and diversion for beneficial uses and treats priority of appropriation and continued beneficial use as giving the prior and better right.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 27, 28; Dec. Dig. § 34.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied September 19, 1910.

**2.** WATERS AND WATER COURSES (§ 2*)—DOCTRINE OF APPROPRIATION COMPETENTLY ADOPTED IN COLORADO—CONGRESSIONAL SANCTION AS RESPECTS PUBLIC LANDS.

In choosing between the doctrine of riparian rights and that of appropriation, Colorado acted within the limits of her authority, first as a territory and then as a state, and her choice was recognized and sanctioned by Congress, so far as the public lands were concerned.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 1; Dec. Dig. § 2.*]

**3.** WATERS AND WATER COURSES (§ 21*)—WATER RIGHTS ACQUIRED ON PUBLIC LANDS NOT AFFECTED BY SUBSEQUENT DISPOSITION OF LANDS UNDER PUBLIC LAND LAWS.

When a water right and a ditch right connected therewith are acquired while the lands embracing the point of diversion and a portion of the ditch are public lands, those rights are not affected by the subsequent location, entry, and patenting of such lands.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 14; Dec. Dig. § 21.*]

**4.** WATERS AND WATER COURSES (§§ 9, 15*)—WHAT CONSTITUTES "APPROPRIATION" OF WATER IS QUESTION OF LOCAL LAW—LOCATION OF GOLD PLACER CLAIM DOES NOT OPERATE AS APPROPRIATION IN COLORADO.

What constitutes a valid appropriation of water to beneficial uses is a question of local law, and by the law of Colorado the location of a riparian gold placer claim is not in itself such an appropriation, for the actual application of the water to a beneficial use is the true test of appropriation.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 4, 7; Dec. Dig. §§ 9, 15.*

For other definitions, see Words and Phrases, vol. 1, pp. 466–468; vol. 8, p. 7580.]

**5.** WATERS AND WATER COURSES (§ 9*)—RIPARIAN RIGHTS ACQUIRED THROUGH PATENTS FOR PUBLIC LANDS ON NONNAVIGABLE STREAM USUALLY DEPEND UPON LOCAL LAW—PATENT FOR GOLD PLACER CLAIM IN COLORADO GIVES NO RIGHT TO UNAPPROPRIATED WATERS.

In so far as the rights and incidents of riparian proprietorship are concerned, conveyances by the United States of public lands on nonnavigable streams and lakes, when it is not provided otherwise, are to be construed and have effect according to the law of the state in which the lands are situate; and by the law of Colorado a conveyance of riparian land, even if it be a gold placer claim, does not carry any right to the unappropriated waters of the stream.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 4; Dec. Dig. § 9.*]

**6.** WATERS AND WATER COURSES (§ 144½*)—RIGHT OF WAY FOR DITCH OVER PRIVATE LANDS—ACQUISITION NECESSARY.

The right to appropriate the waters of a stream does not carry with it the right to burden the lands of another with a ditch for the purpose of diverting the waters and carrying them to the place of intended use, for that cannot be done without a grant from the landowner or a lawful exercise of the power of eminent domain.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 147; Dec. Dig. § 144½.*]

**7.** WATERS AND WATER COURSES (§ 144½*)—EASEMENT FOR DITCH DOES NOT GIVE RIGHT TO ALTER OR ENLARGE.

An easement for a ditch used in diverting and carrying water covered by an existing appropriation does not carry with it any right to enlarge the ditch, or to change its location or to use it in diverting and carrying a largely increased volume of water under a later appropriation, but is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

limited to the maintenance and use of the ditch, substantially as then constructed, for the purpose of utilizing the existing appropriation.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 147; Dec. Dig. § 144½.*]

8. WATERS AND WATER COURSES (§ 144½*)—INCREASED APPROPRIATION OF WATER EFFECTED THROUGH WRONGFUL ENLARGEMENT OF DITCH—VALIDITY.

An increased appropriation of water which is initiated and maintained by an unlawful trespass upon the lands of another, in the nature of an unauthorized enlargement of an existing ditch, is of no validity against him whose property is the subject of the trespass.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 147; Dec. Dig. § 144½.*]

Appeal from the Circuit Court of the United States for the District of Colorado.

Bill by the Colorado Gold Dredging Company against C. M. Snyder. From an order granting an injunction, defendant appeals. Reversed.

E. T. Wells (W. A. Guyselman, on the brief), for appellant.

William V. Hodges (Clayton C. Dorsey, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

VAN DEVANTER, Circuit Judge. This is an appeal from an interlocutory order granting an injunction, and the ex parte affidavits and other proofs upon which the order was granted show that the case is as follows: The Colorado Gold Dredging Company, spoken of as the plaintiff, is the owner of certain placer mining claims along the Swan river, a small nonnavigable mountain stream in Summit county Colorado, and Charles M. Snyder, spoken of as the defendant, is in possession of and has the right to mine and to purchase certain other placer mining claims, including one called the Mascot, higher up the same stream. These latter claims are owned by E. T. Wells and it is through a contract with him, made in 1907, that the defendant's rights in them were acquired. The Mascot embraces the bed of the Swan river and some of the valley land on either side. It probably was located in 1870, was entered by Wells at the local land office in 1895, and was patented to him in 1898. Prior to its location—that is, while it was still public land—a ditch, called the Galena, was constructed from a point on the Swan river well within the limits of the claim to a point lower down the valley and for several years a portion of the waters of the river was diverted therefrom and carried through this ditch to the vicinity of the claims first mentioned where it was used in mining operations. Some of the proofs strongly suggest that this ditch and water right were abandoned before Wells' entry at the local land office, but it will be assumed, for present purposes only, that their abandonment is not established. After the issuance of the patent to Wells, the North American Gold Dredging Company, claiming to be the owner of the old ditch and the water right acquired thereby, materially enlarged and partially reconstructed the ditch, including the portion upon the Mascot, and since then that company and its suc-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cessors in title, the American Gold Dredging Company and the plaintiff, have carried through the ditch at irregular intervals a greatly increased portion of the waters of the river, and have used the same in mining operations on the claims now owned by the plaintiff. Wells had no knowledge of the enlargement and reconstruction of the ditch until after the work was done, has not consented thereto or acquiesced in the enlarged use of the ditch, and has not been compensated in any wise for the enlarged taking and use of his land.

At the hearing upon the application for the injunction, the plaintiff claimed something by reason of another old ditch, called the Delaware, but counsel for the plaintiff now say:

"The Delaware ditch need not be considered at all. For the purposes of this argument we will admit that the Delaware ditch is abandoned."

After acquiring an interest in the Mascot, the defendant, for the purpose of working the claim and extracting the placer gold therein, as authorized by his contract with Wells, began the construction within the limits of the claim of a tunnel along and under the bed of the Swan river in the direction of the head of the Galena ditch. The tunnel is nearly parallel to the ditch, is over 120 feet distant therefrom, and has some tendency, by reason of the induced seepage through the adjacent porous soil, to diminish the natural superficial flow of the river and to lessen the amount of water which can be diverted therefrom by the ditch as enlarged and reconstructed. But this tendency, according to the present proofs, is not sufficient to justify the belief that the tunnel does now or ever will interfere with or injuriously affect the enjoyment of the water right acquired through the original construction and use of the ditch.

The injunction granted by the interlocutory order challenged by this appeal is directed against the prosecution of the work upon this tunnel, and the question to be considered is: Was the injunction improvidently granted? The common-law doctrine in respect of the rights of riparian proprietors in the waters of natural streams never has obtained in Colorado. From the earliest times in that jurisdiction the local customs, laws, and decisions of courts have united in rejecting that doctrine and in adopting a different one which regards the waters of all natural streams as subject to appropriation and diversion for beneficial uses and treats priority of appropriation and continued beneficial use as giving the prior and superior right. Yunker v. Nichols, 1 Colo. 551; Coffin v. Left Hand Ditch Co., 6 Colo. 443, 447; Platte Water Co. v. Northern Colo. Irrigation Co., 12 Colo. 525, 531, 21 Pac. 711; Crippen v. White, 28 Colo. 298, 64 Pac. 184. In so choosing between these inconsistent doctrines, Colorado acted within the limits of her authority, first as a territory and then as a state, and her choice was recognized and sanctioned by Congress, so far as the public lands of the United States were concerned. United States v. Rio Grande Irrigation Co., 174 U. S. 690, 702–706, 19 Sup. Ct. 770, 43 L. Ed. 1136; Gutierres v. Albuquerque Land & Irrigation Co., 188 U. S. 545, 552–554, 23 Sup. Ct. 338, 47 L. Ed. 588; Clark v. Nash, 198 U. S. 361, 370, 25 Sup. Ct. 676, 49 L. Ed. 1085; Kansas v. Colorado, 206 U. S. 46, 94, 27 Sup. Ct. 655, 51 L. Ed. 956; Boquillas Land & Cattle Co.

v. Curtis, 213 U. S. 339, 29 Sup. Ct. 493, 53 L. Ed. 822. Congress also by its first enactment upon the subject, now embraced in Rev. St. § 2339 (U. S. Comp. St. 1901, p. 1437), granted the right of way over the public lands for ditches employed in so appropriating and applying water to beneficial uses, and by another enactment, now embraced in Rev. St. § 2340 (U. S. Comp. St. 1901, p. 1437), declared that all patents subsequently issued for public lands should be subject to any vested rights to such ditches.

As the Mascot placer was still public land when the Galena ditch originally was constructed thereover and was made the means of diverting and applying to a beneficial use a portion of the waters of Swan river, and as there is no suggestion of any prior conflicting appropriation, it is altogether plain that, to the extent of that diversion and use, a valid appropriation of those waters was effected thereby, and that coincidently there was acquired the right to maintain and use the ditch, substantially as then constructed, for the purpose of continuing that diversion and use. And it is equally plain that neither the right to the use of the water nor that to the use of the ditch was lost or diminished by the subsequent location, entry, and patenting of the Mascot. If these rights were not abandoned and now are held by the plaintiff, it is entitled to have them recognized and protected by an injunction if necessary; but such relief as to them does not seem to be necessary now, for it does not appear that the defendant's tunnel does or will affect them injuriously. Therefore, the justness of the existing injunction must arise, if at all, from the largely increased appropriation which the plaintiff claims was effected by means of the enlargement and reconstruction of the Galena ditch subsequently to the location, entry, and patenting of the Mascot.

In opposition to the claim to an increased appropriation, the defendant advances the twofold contention that the location of the Mascot as a gold placer was in itself an appropriation of all the waters of the Swan river, not theretofore appropriated, in so far as they are required for the working of the placer, and that the United States by the patent to Wells granted to him all the unappropriated waters of the stream where it flows through the placer. Either branch of the contention, if sustained, would defeat the claim to the increased appropriation. In support of the first branch, it is said that a gold placer claim cannot be worked without water, that presumably one who locates such a claim intends to work it and to use any unappropriated waters that may be available for the purpose, and therefore that the location of a gold placer claim bordering upon or embracing the channel of a stream is constructively an appropriation of the unappropriated waters of the stream to the extent that they are required for the working of the claim. And in support of the second branch it additionally is said that the mining laws of the United States contemplate that a patented gold placer claim shall be of value to the grantee, and therefore that the patent carries, by implication, the right to the unappropriated waters of any stream bordering upon or traversing the claim. The argument is plausible, but not tenable. It is in conflict with the established doctrine of appropriation in Colorado and with its recognition and sanction by Congress as respects the public lands. That doc-

trine regards the waters of natural streams as entirely distinct from the lands through which they flow, and regards rights to the use of such waters as dependent upon actual appropriation. In these respects, it makes no distinction between public lands and private lands, between owners of riparian lands and owners of other lands, between places of use which are adjacent to a stream and those which are remote therefrom, or between individuals who desire to apply the waters to placer mining and those who desire to apply them to other beneficial uses. Nor does it recognize a merely constructive appropriation or one which rests only in intention. On the contrary, its requirements are satisfied only when by a union of intent and act the waters actually are subjected to a beneficial use. The Supreme Court of Colorado puts it in this way:

"The true test of the appropriation of water is the successful application thereof to the beneficial use designed; and the method of diverting or carrying the same, or making such application, is immaterial." Thomas v. Guiraud, 6 Colo. 530, 533.

"When the individual by some open, physical demonstration indicates an intent to take for a valuable or beneficial use, and through such demonstration ultimately succeeds in applying the water to the use designed, there is such an appropriation as is contemplated." Larimer County Reservoir Co. v. People, 8 Colo. 614, 616, 9 Pac. 794, 796.

"By the Constitution and laws of Colorado, state and territorial, from the earliest times, rights to the beneficial use of water from natural streams have been acquired by diversion through prior appropriation rather than by grant. It has been the settled doctrine of our courts that such appropriation, to be valid, must be manifested by the successful application of the water to the beneficial use designed, or accompanied by some open, physical demonstration of intent to take the same for such use. * * * The diversion of the water ripens into a valid appropriation only when the water is utilized by the consumer, though the priority of such appropriation may date, proper diligence having been used, from the commencement of the canal or ditch." Platte Water Co. v. Northern Colo. Irrigation Co., 12 Colo. 525, 531, 21 Pac. 711, 713.

"It must be applied to some beneficial use, and, in case of irrigation, it must be actually applied to the land before the appropriation is complete." Farmer's, etc., Co. v. Southworth, 13 Colo. 111, 114, 21 Pac. 1028, 1029, 4 L. R. A. 767.

True, gold placer claims cannot be worked without water, but this applies to nonriparian claims quite as much as to those which are riparian, and water usually is applied to both in substantially the same way; that is, by a ditch which diverts it at a point beyond the limits of the claim and then carries it to the place of use. Rarely can a riparian claim be worked successfully by the aid of the waters of the contiguous stream unless they be diverted some distance above the claim, and even then the volume of water is often so inadequate that it must be supplemented by drawing upon another stream. Nor are gold placer claims alone in requiring the use of water to render them productive or of value. In Colorado other claims to public lands, such as homestead claims and desert claims, have a like need of water. Indeed, the desert land law (Act March 3, 1877, c. 107, 19 Stat. 377; as amended by Act March 3, 1891, c. 561, § 2, 26 Stat. 1096 [U. S. Comp. St. 1901, p. 1549]) conditions the right to make the preliminary entry upon the making of a declaration under oath of an intention to reclaim the land by conducting water upon the same, and conditions the right to make final entry upon the making of satisfactory proof of reclama-

tion by that means; and yet a preliminary desert entry, even if it be of riparian lands, never is regarded as in itself an appropriation of water, any more than is a preliminary homestead entry of nonriparian lands. Then, too, the location of gold placer claims is largely experimental; the antecedent prospecting seldom being sufficient to be truly determinative of their value. Subsequent and closer prospecting often results in their abandonment, and less than one-half of them ever are carried to the point where water really is used in working them. The locator does not agree to work the claim, but may do so or not at his option, and may prolong indefinitely his possessory right by performing one hundred dollars' worth of work, or making that amount of improvements, on the claim in each year. Considerations such as these point very persuasively to the absence of any good reason for excepting riparian gold placer claims from the doctrine prevailing in Colorado that the waters of all natural streams are subject to appropriation, and that actual application to a beneficial use is the test of appropriation. But it suffices to know that in that state the local customs, laws, and decisions of courts make no such exception.

In Schwab v. Beam (C. C.) 86 Fed. 41, a different conclusion was announced, but that decision stands alone, is not in accord with the decisions of the Supreme Court of Colorado respecting the application of the doctrine of appropriation as there prevailing to the use of water for purposes other than irrigation, and is not sustained by what seems to be the better reasoning. The several congressional enactments, whereby the local customs, laws, and decisions of courts relating to rights to the use of water have been recognized and sanctioned, disclose a settled purpose to make the subject one of local law, as respects the public lands and claims thereto under the public land laws; and in none of these enactments is there anything indicative of a purpose to treat riparian gold placer claims differently from other claims. Not only so, but the first expression of this recognition and sanction was incorporated in the mining laws of the United States at the time of their enactment and still remains a part of them. It broadly includes "rights to the use of water for mining, agricultural, manufacturing, or other purposes," and leaves no room to doubt that it was intended that the local law should apply to riparian gold placer claims the same as to other claims to public lands. Mr. Lindley, in his work on Mines ([2d Ed.] vol. 1, sec. 428), puts the matter quite accurately when he says:

"As to what rights accrue to a placer locator to the water of a nonnavigable stream found within the limits of the location, no definite rule can be stated. It will depend upon the locality in which the claim is situated. If in a state where the ultra doctrine of the common law prevails, his rights to the water would be limited to those of a riparian proprietor. If in a state where the riparian doctrines are abrogated or declared never to have been adopted, his right to use the water would depend upon its proper appropriation for that purpose, and the mere location of the placer claim would not of itself confer any right to the water."

What has been said disposes adversely of the first branch of the contention before stated, and also makes strongly against the second branch, viz., that a patent for a placer claim carries, by implication, the right to the unappropriated waters of any stream bordering upon

or traversing the claim. It needs only to be added that, by the settled rule of decision in the Supreme Court of the United States, conveyances by the United States of public lands on nonnavigable streams and lakes, when it is not provided otherwise, are to be construed and have effect according to the law of the state in which the lands are situate, in so far as the rights and incidents of riparian proprietorship are concerned. Hardin v. Jordan, 140 U. S. 370, 384, 402, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Hardin v. Shedd, 190 U. S. 508, 519, 23 Sup. Ct. 685, 47 L. Ed. 1156; Whitaker v. McBride, 197 U. S. 510, 25 Sup. Ct. 530, 49 L. Ed. 857; Harrison v. Fite, 78 C. C. A. 447, 449, 148 Fed. 781, 783. Here it is not provided otherwise, either by statute or by the patent, and, as has been seen, the local law does not recognize a conveyance of the land as carrying any right to the unappropriated waters of the stream.

As, then, neither the location of the Mascot, nor the patenting of it altered the status of the waters of Swan river, not theretofore appropriated, and as they remained subject to appropriation for beneficial uses, including placer mining, at the time of the increased appropriation, which the plaintiff asserts was effected through the enlargement and reconstruction of the Galena ditch and its subsequent enlarged use, it will be necessary to consider whether the plaintiff is entitled to demand that that appropriation be recognized and respected by the defendant, notwithstanding the facts, as before stated, that Wells had no knowledge of the enlargement and reconstruction of the ditch until after the work was done, has not consented thereto or acquiesced in the enlarged use of the ditch, and has not been compensated for the enlarged servitude so attempted to be imposed upon his land.

The right to appropriate the waters of a stream does not carry with it the right to burden the lands of another with a ditch for the purpose of diverting the waters and carrying them to the place of intended use, for that cannot be done without a grant from the landowner or a lawful exercise of the power of eminent domain; and this although the particular circumstances be such that the proposed appropriation cannot be effected without the ditch. In this regard the situation of an intending appropriator is analogous to that of a railroad company which, although empowered to construct, maintain, and operate a line of railroad between designated points, cannot construct its road over intervening private lands until the right so to do is granted by their owner or is acquired by condemnation. Since as early as 1861 the statutes of Colorado have authorized the condemnation of rights of way over private lands for ditches, but upon condition that just compensation therefor be paid; and the state Constitution, which antedates the increased appropriation now in question, contains the following provision (article 16, § 7):

"All persons and corporations shall have the right of way across * * * private * * * lands, for the construction of ditches, canals and flumes, for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, * * * upon payment of just compensation."

Then in Stewart v. Stevens, 10 Colo. 440, 446, 15 Pac. 786, 789; the court gave effect to these statutes and this constitutional provision

by denying an asserted right to construct a ditch, for irrigation purposes, across the lands of another without a grant from him and without making compensation therefor; it being said in that connection:

"We have formed a Constitution which prohibits the taking of private property for private use without compensation; and the Legislature has provided the proceedings by which, upon the payment of just compensation, private property may be subjected to private use."

When the Mascot placer was patented to Wells, he took it subject to the easement therein which had been acquired under the congressional enactment by the construction and use of the original Galena ditch while the placer was still a part of the public lands, but that easement extended only to the maintenance and use of the ditch, substantially as then constructed, for the purpose of diverting and carrying the volume of water theretofore appropriated, and did not give any right to enlarge the ditch, or to change its location, or to use it in diverting and carrying a largely increased volume of water. McGuire v. Brown, 106 Cal. 660, 39 Pac. 1060, 30 L. R. A. 384; Vestal v. Young, 147 Cal. 715, 82 Pac. 381; Clear Creek Co. v. Kilkenny, 5 Wyo. 38, 44, 36 Pac. 819; Davenport v. Lamson, 21 Pick. (Mass.) 72; Jennison v. Walker, 11 Gray (Mass.) 423, 426; Darlington v. Painter, 7 Pa. 473; Moorhead v. Snyder, 31 Pa. 514; Jaqui v. Johnson, 27 N. J. Eq. 526; Long on Irrigation, § 64; 2 Washburn's Easements (4th Ed.) pp. 64, 175; Angell on Water Courses (7th Ed.) § 224; 14 Cyc. 1205, 1211. Thus it was essential that the right so to alter, the ditch and to enlarge its use be acquired through a grant from Wells or through a resort to appropriate condemnation proceedings. But, as no such right was acquired, the change made in the ditch and its enlarged use were as unlawful and as much a trespass as would have been the construction and use of an entirely new ditch in the like circumstances. And not only was the increased water appropriation initiated by means of this trespass, but the maintenance and enjoyment of that appropriation are dependent upon a continuance of the trespass.

In these circumstances it seems altogether clear that the defendant, who practically stands in the shoes of Wells, is not bound to recognize and respect that appropriation.

The law not only looks with great disfavor upon claims which are grounded in and sustained by a trespass, but regards them as of no validity against those whose property is the subject of the trespass, save when by acquiescence or neglect the right to object to it is waived or lost. Smith v. Denniff, 24 Mont. 20, 22, 60 Pac. 398, 81 Am. St. Rep. 408; Prentice v. McKay, 38 Mont. 114, 98 Pac. 1081; McGuire v. Brown, 106 Cal. 660, 670, 39 Pac. 1060, 30 L. R. A. 384; Bergquist v. West Virginia Co., 18 Wyo. 234, 106 Pac. 673, 684; Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732; Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735; Erhardt v. Boaro, 113 U. S. 527, 534, 5 Sup. Ct. 560, 28 L. Ed. 1113. The present proofs do not disclose any such acquiescence or neglect; nor do they indicate that the use of the enlarged ditch in carrying the increased volume of water has come to be a matter of public concern within the rule applied in Roberts v. Northern Pacific R. R. Co., 158 U. S. 1, 10, 15 Sup. Ct. 756, 39 L. Ed. 873;

Stuart v. Union Pacific R. R. Co. (C. C. A.) 178 Fed. 753, and like cases.

No objection is made to the work in which the defendant was engaged, save the one that it constituted a wrongful interference with the water rights asserted by the plaintiff, and, as that objection appears to be certainly untenable, it is clear that the injunction was granted improvidently.

The interlocutory order is accordingly reversed.