## LUTCHER & MOORE LUMBER COMPANY *v.* KNIGHT.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 101.  Argued January 24, 1910.—Decided April 11, 1910.

A party who as defendant in an equity case has successfully asserted that his adversary's claim is not cognizable in equity, cannot subsequently in an action at law brought by him against the plaintiff involving the same matter assert that the same claim set up as a defense is of an equitable character.

The objection in an action at law in the Federal courts that a defense is of equitable cognizance cannot be taken for the first time in the appellate court. *Burbank* v. *Bigelow*, 154 U. S. 558.

On certiorari granted under the provisions of the Court of Appeals Act

of 1891 the entire record is before this court with power to decide
the case as presented to the Circuit Court of Appeals on the writ of
error issued by it.

The great purpose of the Court of Appeals Act to which all its pro-
visions are subservient is to distribute jurisdiction of the Federal
courts and to relieve the docket of this court by casting on the
Circuit Courts of Appeals the duty of deciding cases over which
their jurisdiction is final.

Although ordinarily the mandate of this court in cases coming to it
on certiorari to the Circuit Court of Appeals goes directly to the
Circuit Court, where certiorari is granted, solely on the ground that
the Circuit Court of Appeals has failed to consider the case, the
judgment will be reversed and the case remanded to that court
with instructions to hear and decide it.

THE facts are stated in the opinion.

*Mr. A. P. Pujo*, with whom *Mr. George E. Holland* was on
the brief, for petitioners.

*Mr. M. J. Cunningham*, with whom *Mr. M. J. Cunningham,
Jr.*, was on the brief, for respondents.

MR. JUSTICE WHITE delivered the opinion of the court.

On January 28, 1882, Dan R. Knight and John A. Lovett
sold to William J. Knight several tracts of land situated in the
State of Louisiana. The price stated in the act of sale was
$15,000, $500 cash and the balance, $14,500, on credit, evi-
denced by a note of the purchaser. On February 5, 1887,
W. J. Knight sold to Viola P. Knight, wife of Dan R. Knight, a
one-half interest, and on February 7, 1887, he sold to J. C.
Knight a one-fourth interest in the same lands. The remain-
ing one-fourth interest was parted with by an act of sale dated
April 13, 1889, wherein W. J. Knight joined with Viola P.
Knight and John C. Knight in selling the entire land to Henry
J. Lutcher and G. Bedell Moore. On April 3, 1901, Moore sold
his undivided one-half interest to the Lutcher & Moore Lum-
ber Company. All these acts of sale were duly recorded in the
proper land conveyance records.

In March, 1903, William H. Knight, his brother, and two sisters, one a married woman, whose husband joined in the suit as a merely technical party, commenced this action in the state district court of Vernon Parish, Louisiana, against Henry J. Lutcher and the Lutcher & Moore Lumber Company, asking to be adjudged the owners of and to be entitled to the possession of an undivided half interest in the lands bought by William J. Knight in 1882 from D. R. Knight and John A. Lovett. The right of ownership was based upon the averment that the petitioners were children of William J. Knight; that the property bought by him was acquired during the marriage between their father and mother; that it formed a part of the community existing between them and constituted an acquet of the community at the time of the death of the mother in August, 1885. The right of the father to sell, in 1887 and 1889, the one-half interest belonging to their mother, as the result of her community estate, was denied, and it was charged that the defendants who were in possession in virtue of the attempted sale made by the father were mere trespassers. It was besides averred that William J. Knight, the father, married a second time, in June, 1886.

Because of diversity of citizenship the cause was removed into the Circuit Court of the United States for the Western District of Louisiana. In that court the defendants answered. In addition to averring that the petition disclosed no cause of action and denying generally all the allegations of the petition not expressly admitted, it was averred: That William J. Knight had never intermarried with the mother of the petitioners; that even if there had been such a marriage and a community resulting from it, the property sued for was not an acquet of such community, because it was the separate property of W. J. Knight, as no cash price was ever paid by him for the property and no note given as recited in the notarial act of sale, and, although the transaction was put in the form of a sale, it was only ostensibly so, having been merely intended to be a donation to him of the property. It was, how-

ever, moreover alleged that the property never formed part of a community existing between Knight and his alleged first wife, even if there was such community, because the property was conveyed to him under a secret agreement, for the benefit of his vendors, and that all the subsequent transfers were in pursuance of such agreement. It was further alleged that the sales to the defendants were executed in good faith for valuable considerations without notice or knowledge of the claims of plaintiffs, Knight being then married and there being no evidence of record of a previous marriage or of the death of the alleged previous wife. In a further paragraph of the answer it was claimed "that the pretended sale made July 28, 1882, to said William J. Knight was a simulation and a fiction," and that the seeming grantors made said pretended sale for the sole purpose of screening said property from the pursuit of their creditors; "that the property never became community property, but always belonged to said Knight and Lovett, as William J. Knight and his alleged wife and all parties well knew, until the sale made April 13, 1889, by W. J. Knight, John C. Knight and Viola P. Knight to Henry J. Lutcher and G. Bedell Moore." The respective interests of the defendants in the land were next averred, their vendors were called in warranty, and it was prayed that in the event of eviction defendants might recover of their warrantors the proportionate amount of the purchase price which they had received. An amendment to the answer was subsequently filed October 27, 1903, amplifying the claim that the sale in 1882 to William J. Knight was not *bona fide,* but was for the benefit of the grantors, and included both movable and immovable property belonging to said vendors, and averring that the $500 recited cash consideration was paid, but with money of the grantors, and that a note was executed, but with no intention to pay the same or to demand payment thereof, and that it was in fact redelivered to Knight without his making payment, and it was averred that the pretended sale constituted only a paper title to the property, "and same never in fact nor in law became the

property of the community between him and his so-called wife; and no interest whatever in said property vested in said community, and the said plaintiffs herein are without right or equity to any right, title or interest in the said lands." The prescriptions of one, two, four, five and ten years were also pleaded.

As expressly stated in the argument, both by counsel for the petitioners and by counsel for the respondents, and as appears from recitals contained in a petition for rehearing printed in the record, to which we shall hereafter more particularly refer, the defendants who had removed this action to the Circuit Court in December, 1903, filed in that court their bill of complaint, in which they made the plaintiffs in this action defendants. The bill, after substantially reiterating the averments which we previously recited, and which were contained in the answer filed in this cause, prayed that the further prosecution of the action be perpetually enjoined. The right to prevent the further prosecution of the action at law was based on the assertion that the law action "clouded your orators' title to the land in suit; that your orators' defenses are equitable, and that the pendency of said suit and the cloud cast on your orators' title works irreparable injury and damage to your orators and that they have no adequate remedy at law."

The following demurrer was interposed to the bill of complaint:

"First. Plaintiffs are estopped from attacking their own title.

"Second. The deed under which the defendants claim has been adjudged a good and valid title.

"Third. The complaint comes too late, the defendants having filed a suit in law, and the plaintiffs have answered to their demands, in which they set up a defense, which if sustained will be adequate in law.

"Fourth. That the allegations of plaintiffs' bill of complaint is simply a reiteration of their answer in suit No. 276 in the

Circuit Court of the United States for the Western District of Louisiana, at law, and that the allegations therein contained and set forth set up a plea of estopped *in pais* and constitute a complete and adequate remedy at law.

"Fifth. That the bill of complaint discloses no right or cause of action.

"Finally. Defendants especially demur to the right of plaintiffs to bring their bill in equity, as neither the law nor the jurisprudence of this State authorizes or provides suits in equity, and especially is this so as to real estate situated in the State. Hence, defendants *prove* that the injunction herein asked for be denied. That this branch of the case be dismissed at plaintiffs' cost and suit No. 276 be proceeded with according to law."

After argument, and on February 16, 1904, a decree was entered in favor of the respondents, in which it was recited that "The court sustained the demurrer and dismissed the suit at cost of complainants." This action, which had in the meanwhile been pending in the Circuit Court, upon the issues made up as heretofore stated, was tried and resulted in a verdict and judgment in favor of the defendants. Error having been prosecuted from the Circuit Court of Appeals in that court on April 4, 1905, the judgment was reversed and the cause remanded. The court did not pass upon the merits, because it found that the citizenship of the Lutcher & Moore Lumber Company, the corporation defendant, was not adequately averred in the petition for removal, and therefore the proper basis for jurisdiction in the court below had not been laid (136 Fed. Rep. 404) and a petition for rehearing was refused. 139 Fed. Rep. 1007.

In the Circuit Court, after the receipt of the mandate of the Circuit Court of Appeals, plaintiffs objecting and excepting, the defendants, in accordance with leave granted, amended the averments of citizenship in the petition for removal so as to cause them to be in all respects adequate. Subsequently, upon grounds which it is not necessary to state, plaintiffs

filed a paper styled a demurrer to portions of the answer of
the defendants and pleas of *res judicata* and estoppel. The
case was tried the second time to a jury in October, 1906.
During the progress of the trial the deposition of J. A. Lovett,
one of the original vendors of Knight, was offered by the
defendants. The testimony tended to show that the note for
$14,500, described in the act of sale by which Knight had
acquired the property as having been given as part of the
purchase price, had not been paid by him prior to the death
of his first wife, and that it had subsequently been paid out
of the purchase price realized from the various sales which
were assailed, and that the amount was therefore a debt of
the community, and the plaintiffs as heirs of their mother
could not attack the sales without tendering their share of
the community debt, which had been paid as the result of
the sales. This testimony was excluded by the court, be-
cause, among other reasons, it was held not to be competent
under the defenses made in the answers. Thereupon the
defendants requested to be allowed to amend on the ground
that on the former trial the testimony had been admitted as
within the issues arising from the answers, and that the de-
fendants "therefore took no steps to provide for the con-
tingency of a change in the opinion of the court by amending
their answers so as to clearly make such defenses admissible."
To the action of the court in refusing to allow this amend-
ment an exception was taken. Differing from the first trial,
there was a verdict in favor of the plaintiff, upon which judg-
ment was entered. Various exceptions additional to those
to which we have just referred were taken by the defendants.
Without going into detail it suffices to say that these excep-
tions were varied in character, embracing all the defenses
made in the answers and covered rulings of the court on the
admission and rejection of evidence and the refusal to give
requested instructions. On error the case again went to the
Circuit Court of Appeals for the Fifth Circuit, and as the
result of the numerous exceptions taken below the assign-

ments of error in substance presented for decision the many
questions raised in the trial court.

The Circuit Court of Appeals affirmed the judgment of the
trial court, and the opinion delivered by it is as follows: "By
the Court: After a thorough and attentive consideration of
the questions raised on this writ, we are of opinion that the
matters of defense relied upon by plaintiff in error on the
trial below, in so far as they were not given consideration,
were of an equitable nature, not cognizable in a court of law,
we therefore affirm the judgment of the Circuit Court." A
lengthy petition for rehearing was filed on December 26,
1907, and a few days thereafter there was also filed what was
styled "Motion by plaintiffs in error to withhold mandate,
stay proceedings, and order trial of the equitable issues, with
suggestions of *res judicata* and waiver." Both in the petition
and in the motion counsel contended that contrary to the
ruling of the Circuit Court of Appeals the trial court held all
the issues properly triable on the law side of the court, and
that the plaintiffs in this action never at any time suggested
that any of the matters of defense were equitable, and to
dispose of the cause as the court had done would deprive the
defendants of their rights and entail great hardship upon
them. The defendants also incorporated in the motion the
bill of complaint filed in the equity cause heretofore referred
to and which was instituted by them to enjoin the prosecution
of this action, as also the demurrer and the decree of dis-
missal. In connection therewith the suggestion was made
that the decree in said cause ought in conscience to be treated
as *res judicata* of the question of the nature of the defenses
interposed in this action. Elaborate argument was advanced
to sustain the contention that the defenses introduced
amounted only to a denial of the case made by the plaintiffs,
and that the evidence excluded bv the trial court should have
been received, and upon the undisputed record a verdict
should have been directed for the defendants below. The
appellate court was asked to allow an oral argument of the

petition for rehearing: "In view of the fact that the case has been disposed of on questions not raised by either party, and not considered when this cause was submitted, and in view of the attitude of the trial court with reference to the defenses being at law and not in equity, and in view of the attitude plaintiffs in error have been placed in, because of this question having been determined adversely to its rights for the first time in this court." The record does not show that any formal disposition was made of the petition for rehearing, and the motion to which we have referred, other than an entry, dated January 22, 1908, reading as follows: "Ordered, that the issuance of mandate in this case be, and it is hereby, stayed for thirty days from this date." The case thereupon came here in consequence of the allowance of a writ of certiorari.

The record unquestionably establishes that the Circuit Court, with the acquiescence of all parties, treated the defenses. interposed by the answer of the defendants as legal in their nature. Aside, however, from the strict record, both the respondents and the petitioners call our attention to the transcript containing the proceedings in the equity cause. Indeed,. counsel for respondents particularly press upon our attention that the defendants below, plaintiffs in the equity cause, acquiesced in the decree entered against them in the Circuit Court in such cause by not appealing therefrom, and that "it binds and estops them from now urging the same matters set up in that bill." There is no denial, but, on the contrary, by necessary implication, counsel for respondents admit the truth of the statement made in the petition for rehearing, filed in the Circuit Court of Appeals, that the cause was disposed of by that court "on questions not raised by either party, and not considered when this cause was submitted," and contrary to the "attitude of the trial court with reference to the defenses being at law and not in equity."

It is a reasonable inference that when, after the removal of the cause, the defendants filed their bill of complaint setting

up the defenses which they had urged in their answer in this action, such course must have been suggested by the fact that the distinction between law and equity did not prevail in the courts of the State of Louisiana, and that therefore it was well for them after they had removed the cause into a court of the United States to seek to conform to the practice there prevailing, and, in any event, to pursue a course which would render it certain that in the new forum they would not be deprived because of the form of pleading of their right to have their defenses passed upon. The plaintiffs in the action at law (this action) who were the defendants in the equity cause, having as a defense to that cause insisted that the defenses were not cognizable in equity, and having prevailed in such contention were certainly in conscience placed in a position where they could not by a change of attitude assert that the defenses were legal in their nature and thus deprive the defendants of all means of defense in this action. Indeed, the record does not intimate that they sought to do so, since it affirmatively establishes that the plaintiffs in this action, after having obtained as respondents the adjudication in their favor in the equity cause, an adjudication which was as well binding upon them as upon the complainants, acquiesced in the decree, an acquiescence which was manifestly concurred in by the opposing parties and sanctioned by the trial court. The case is altogether unlike that which would be presented by an objection urged by the respondents to a bill in equity, against the power of the court to exert jurisdiction over a cause of action indisputably cognizable only in a court of law, whereby a deprivation of the constitutional right of trial by jury would result. In this case, on the contrary, the question considered did not concern the inherent jurisdiction of the court over the subject-matter. The decision of the question before us is controlled by the case of *Burbank* v. *Bigelow*, 154 U. S. 558. That was an action at law in which the plaintiff recovered judgment. In this court, for the first time, the objection was made by the unsuccessful

party that the matter of the demand of plaintiff was one of equitable cognizance. The court, however, said (p. 559):

"The objection that the matter of plaintiffs' demand is one of equitable cognizance in the Federal courts cannot prevail. No such objection was raised in the court below at any stage of the proceedings, and it cannot be permitted to a defendant to go to trial before a jury on the facts of a case involving fraud, and let it proceed to judgment on the verdict without any attempt to assert the equitable character of the suit, and then raise that question for the first time in this court."

Applying this doctrine to the facts and circumstances which we have previously stated, we are of opinion that it inevitably results that the effect of the action of the Circuit Court of Appeals was substantially to deny to the plaintiffs in error in that court, petitioners here, their day in court; in other words, was equivalent to condemning them without affording them an opportunity to be heard.

It is undoubted that by the operation of the writ of certiorari, granted in accordance with the provisions of the Judiciary Act of 1891, the entire record is before us with power to decide the case as it was presented to the Circuit Court of Appeals, by reason of the writ of error issued out of that court. Certain is it also that the Judiciary Act of 1891 contemplates that, as a general rule, where under its provisions a case comes to this court on certiorari to a Circuit Court of Appeals it will be disposed of so that the mandate of this court, to avoid circuity, will go directly to the Circuit Court. The great purpose of the act of 1891, however, to which all its provisions are subservient, is to distribute the jurisdiction of the courts of the United States, and thus to relieve the docket of this court by casting upon the Circuit Courts of Appeal the duty of finally deciding the cases over which the jurisdiction of those courts is by the act made final. The power to certiorari in accordance with the act, in its essence, is only a means to the end that this imperative and responsible duty may be

adequately performed. As it-is patent from the statement we have made that the only ground upon which the power to certiorari could have been exerted was the failure of the court below to consider the case before it, we think this record presents an exception to the general rule of procedure above referred to. In other words, in a case like this we think the judgment of the Circuit Court of Appeals must be reversed and the case be remanded to that court to the end that the duty to hear and decide it may be performed. To hold otherwise would be repugnant to the plain intent of the act of 1891, since it would recognize a practice by which the concededly essential purpose of the act of 1891 could be disregarded or be made practically of no avail.

*The judgment of the Circuit Court of Appeals is reversed and the case is remanded to that court for further proceedings in conformity with this opinion.*