## HUSE v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 74.   Argued November 17, 1911.—Decided January 9, 1912.

A mail service contractor cannot claim that he accepted a contract
under misapprehension when between the time of his proposal and
its acceptance he took a temporary contract for carriage of the
identical mails contracted for.

A contract for delivery of all mails at Union Station, Omaha, was
properly construed by the Postmaster General as including mail
delivered by three railroads not in the schedule, it appearing, how-
ever, that the mail so delivered had formerly been delivered by one
of the railroads mentioned in the schedule and were included in a
route specified in the contract.

A mail service contractor whose contract had been cancelled for fail-
ure to perform sued in the Court of Claims for balance due and for
damages for cancellation; that court held he was not entitled to
judgment for the balance due because it appeared that the contract
was properly cancelled and that the Government had sustained
damages in excess of the balance due.   In this court, *held:* that as
the objection that the balance due could not, in the absence of a
counterclaim pleading, be offset against the damages sustained by
the Government had not been raised in the Court of Claims, that
court rightly offset it, and the objection cannot be raised for the
first time on appeal in this court.

*Quære:* Whether the rules of practice in the Court of Claims would
not permit the offset to be made in absence of any pleading setting
up counterclaim or offset.

44 C. Cl. 19, affirmed.

THE facts, which involve the construction of a contract
for screen-wagon mail service in Omaha, Nebraska, are
stated in the opinion.

*Mr. Edwin C. Brandenburg,* with whom *Mr. Clarence
A. Brandenburg* and *Mr. F. Walter Brandenburg* were on
the brief, for appellant:

The carrying of mails arriving over roads not men-

tioned in the advertisement for proposals was 'an extra
service for which the appellant was entitled to compensa-
tion. *Woolverton* v. *United States,* 27 C. Cl. 292; *Knox* v.
*United States,* 30 C. Cl. 59; *Woolverton* v. *United States,*
34 C. Cl. 247, distinguished; and see *Utah Stage Co.* v.
*United States,* 39 C. Cl. 420; affirmed, 199 U. S. 422.

If the contract on its face did not, by its special pro-
visions, require the appellant to carry the mail arriving
over roads not mentioned, or under the general provision
relating to additional service, then as the contract speci-
fies the particular roads transporting the mail which the
appellant was to carry, parol evidence was inadmissible
for the purpose of showing that the contract required
appellant to carry mail brought to Omaha over other
roads not mentioned.

By its own terms the contract excluded the mail
brought into the Union Station over roads not men-
tioned in the advertisement and it was not competent to
extend, by parol evidence, the duty of the appellant to
such roads; and further, if such evidence was competent,
it shows the appellant fully performed his duty as to
making inquiry and that after so doing he was not in-
formed and had no knowledge that the Government, by
its advertisement, expected him to carry mail arriving
over roads not mentioned therein.

On the facts as found by the court below, the action of
the Postmaster General in annulling the appellant's con-
tract was without right and unlawful.

At the time the Postmaster General annulled this con-
tract the Government itself was in default in respect of
the only obligation it assumed, to wit, the payment of the
stipulated compensation, and being in default, it had no
right to annul the contract. *Mason* v. *Thompson,* 94 Min-
nesota, 472; *Graf* v. *Cunningham,* 109 N. Y. 372; *Hatton*
v. *Johnson,* 83 Pa. St. 222; *Meyers* v. *Gross,* 59 Illinois, 439.

As the United States itself was in default, it had no

right to annul the contract unless, such annulment be treated as the exercise of the right to terminate the contract at any time upon allowing the contractor an additional month's pay. If so treated, judgment should have been rendered for the appellant.

The record discloses no fault on the part of the appellant. It wholly fails to show any failure on his part to make due inquiry as to the service expected of him, or knowledge in advance of executing the contract, of the relations between the Union Pacific Railroad and the other railroads not mentioned in the advertisement. *Otis* v. *United States,* 20 C. Cl. 315.

Reasonably construed, and strictly construed certainly so, the service required of the appellant was not covered by his contract.

Whether or not the contract was properly annulled, the appellant is entitled to judgment for services rendered.

No counterclaim was filed and no damages have been assessed by the Auditor for the Post-Office Department. To offset the amount found to be due the appellant, therefore, it was necessary for the defendant, as with any other litigant, to file a counterclaim if it intended to insist upon one, particularly where, as in this case, the loss sustained by the defendant, if any in fact was sustained, arose after the annulment of the contract. Upon that issue, if presented, the appellant would have been entitled to be heard and was, as a matter of right and justice, entitled to be apprised by the pleadings.

*Mr. Assistant Attorney General Thompson,* with whom *Mr. George M. Anderson* was on the brief, for the United States:

No fraud or deception was practiced on appellant as to the quantity of mails to be carried under his contract to and from the Union Station.

The obligation rests upon every man of reasonable

prudence and intelligence to properly inform himself before incurring any liability under a proposed contract, and unless fraud or deception has been employed in inducing him to enter into the contract, he will be held to have so informed himself. *Dair* v. *United States*, 14 Wall. 1, 6; *Dickerson* v. *Colgrove*, 100 U. S. 578.

The Postmaster General has the right to require suitable equipment of appellant before commencement of his service under his contract.

The Postmaster General was the judge of the proper equipment to be furnished by appellant before commencing the services, and, in the absence of bad faith, his right to annul the contract upon appellant's refusal to provide suitable equipment cannot now be assailed. *United States* v. *Arredondo*, 6 Pet. 691; *United States* v. *Cal. & Oreg. Land Co.*, 148 U. S. 31.

The Postmaster General had the right to annul appellant's contract for refusal to obey his instruction.

Appellant failed to comply with reasonable requirements, and in accordance with the terms of the agreement, the Department annulled the contract. *Slavens* v. *United States*, 196 U. S. 229.

The right of the Postmaster General to annul the contract for failure on the part of the appellant to comply with the instructions of the Department clearly embraced the right to withhold payment for services already performed and to relet the contract at appellant's expense.

The opinion of the court below presents a careful and clear analysis of what the contract contained. There are no complications about the facts. It is shown that owing to the failure of appellant to perform his contract in accordance with the terms and requirements thereof the Government sustained a loss of over $14,000.

MR. JUSTICE LURTON delivered the opinion of the court.

The appellant had a four-year contract, commencing

July 1, 1902, for screen-wagon mail service between the post-office and railway mail stations at Omaha, Nebraska. On May 20, 1903, the Postmaster General cancelled the contract and relet it to other parties. Thereupon appellant brought this suit in the Court of Claims, asserting that he had faithfully performed his agreement, but that he had been required to carry mails to and from three railway companies not included in his contract. That his equipment was ample for the service he contracted to render, but that he had been ordered to provide equipment adequate to the excessive service demanded, and that the cancellation of his contract was therefore unauthorized. His suit was to recover, first, the balance due under the contract as construed by the Department; second, the reasonable value of the excess service he had, under protest, been compelled to render; third, the loss of profit resulting from the wrongful annulment of his contract; and, finally, the loss sustained in disposing of equipment which had been bought for the purpose of carrying out his contract.

As is the case with mail contracts, the manner and means of performance were carefully prescribed and power was reserved to the Postmaster General to require other and further facilities if it should be found necessary for the good of the service. The power of the Postmaster General to supervise and the duty of the contractor to conform to his regulations were plainly written down. That vigilant and prompt service might be enforced, he was given the right to make deductions, by way of fines, from compensation earned, for defects in equipment or negligence in the performance of the service. For repeated failures in performance or acts of neglect, or disobedience to orders, he was given power to annul the contract without impairing the right of the Government to recover damages for non-performance.

The findings of the court below as to the repeated

failures of the appellant in the performance of his contract, the inadequacy of his equipment, and his disobedience to the requirements that he should enlarge and improve his facilities, make it clear that the Postmaster General did not act arbitrarily, nor exceed the power reserved, by the infliction of fines or the final cancellation of the agreement on May 20, 1903. When the contract was cancelled it was directed that compensation due should be withheld and the contract relet at the contractor's expense. This reletting was at a price of some $14,000 in excess of what the cost would have been if appellant had performed his agreement. The court below found that when the contract was annulled there was due appellant $2,984.72. For this a judgment was asked, but denied, the court below finding that the loss to the Government as a result of reletting the contract was greatly in excess of the amount due to appellant. His petition was therefore dismissed.

If the contract, fairly construed, exacted the amount of service which the Department claimed, the case of appellant must fail, in view of the facts found as to his insufficient performance, and the loss resulting to the Government from the necessity of reletting the unfinished term of the agreement.

The Postmaster General construed the contract as requiring appellant to receive from and deliver to all railroads using the Union Station at Omaha. This construction required him to receive from and deliver to three railroad companies, not specified in the contract, namely, the Wabash, the Chicago and Northwestern and the Chicago, Milwaukee and St. Paul. The case must, therefore, turn upon the question as to whether the service contemplated by his contract included mails to and from the railways mentioned.

Coming, then, to the service required by the contract. The proposal for the Omaha mail-wagon service and its acceptance were according to a printed official form. This

proposal and acceptance, making the contract proper, refer to and make the public advertisement of the Postmaster General for proposals a part of the agreement, and from it the service contemplated is discovered. That advertisement included certain "instructions to bidders," of which they were required to take notice. Among other things, these "instructions" included the following provision:

"The foregoing schedules show approximately the service as performed during the week named in the statement of service for each route. Bidders, however, must personally inform themselves of the amount and character of the service that will be required during the contract term, beginning with July 1, 1902. Bidders and their sureties are warned that they should familiarize themselves with the terms of the contract, schedules of service, and instructions contained herein before they shall assume any liabilities as such bidders or sureties, to prevent misapprehension or cause of complaint thereafter."

Under the heading "Union Station," in the schedule referred to, there appear the names of four railroad companies opposite the words "Union Station," applicable to each of the named companies, thus: "Union Station; Illinois Central R. R. Co. (143077); Union Pacific R. R. Co. (157001); Chicago, Rock Island and Pacific Rwy. Co. (157064); Missouri Pacific Rwy. Co. (157075)."

It will be noticed that the named railroads bringing mail into the Union Station do not include the Wabash, the Chicago and Northwestern, or the Chicago, Milwaukee and St. Paul. Notwithstanding this omission, appellant was required to carry to and from the Union Station the mails delivered there by these three companies and to be delivered there from the post office to be carried by the same companies. This appellant did under protest; and upon this his suit is grounded.

But the explanation and answer is simple: Originally,

the contract routes of these companies terminated at the Union Pacific transfer at Council Bluffs, Iowa, where the mail was transferred to the Union Pacific Railway and carried into Omaha. After the construction of the Union Station, each of these companies procured the right to carry their mail over the Union Pacific Railway into the Union Station. This saved delay in transfer. The court below found that "the trains so performing said service were known and treated by the Post-Office Department as mail trains of the Union Pacific Railroad Company, route No. 157,001, and were operated under the rules of said Union Pacific Railroad Company, and payment was made therefor to the said Union Pacific Company. All weights of mail carried by said three roads were credited to the Union Pacific Railroad route and weighed thereon. The screen-wagon contractor under the preceding advertisement and contract, which were similar to the one in this case, carried mails to and from the trains of said three roads as part of his contract, and these facts were known to persons having knowledge of the service."

This had for many years been the method of handling the mails carried by the three companies referred to when appellant made his proposal. True, he says he did not know it; but the advertisement warned him of the necessity of making himself familiar with the "terms of the contract, schedule of services and instructions herein before they should assume any liabilities as such bidders or sureties, to prevent misapprehension." Among the facts found is this:

"Prior to submitting said proposal the claimant carefully read the advertisement and instructions to bidders and familiarized himself with their terms, and knew that the trains of the Chicago and Northwestern Railroad, the Chicago, Milwaukee and St. Paul Railroad, and the Wabash Railroad entered the Union Station at Omaha, and to further inform himself as to the amount and character

of the service to be performed he consulted the postmaster
and superintendent of mails at Omaha, who called his
attention to the Instructions to Bidders, also a Mr. Ander-
son, who had been in charge of the work under a former
contract, who explained to him the three depots, including
the Union Station, and the mail to be taken from them
and the number of wagons it would take to perform the
service."

Knowing of the manner in which the mails carried by
the three railroads in question were handled, acquired
after the contract was signed, is not of course, fatal to
his contention that the contract did not include that mail
matter. It does, however, appear that after his proposal
had been accepted and before the beginning of perform-
ance he actually took a temporary contract, for the car-
riage of the identical mails, so that when he entered upon
his own regular contract he was fully aware of the con-
ditions. This must, at least, weaken the force of his
going forward under protest. But aside from this infor-
mation, the advertisement and instructions warned him
to familiarize himself with the situation by personal in-
vestigation and inquiry. This he asserted he had done,
for in his printed proposal he stated that, "This proposal
is made after due inquiry into and with full knowledge of
all particulars in reference to the service and also after
careful examination of the conditions attached to said
advertisement and with intent to be governed thereby."

But it is urged that appellant is at least entitled to a
judgment for $2,984.72, which the court below found to
be the amount due when the contract was terminated.
This contention is based upon the absence of any pleading
setting up as a counterclaim or set-off the difference be-
tween the cost of the service under the reletting and the
entire contract price for the full term under appellant's
contract. But no such objection seems to have been made
in the Court of Claims. That court had all the facts be-

fore it.  It found that there was due on May 20, 1903, for services under the contract prior thereto $2,984.72.  But it found, on the other hand, that at that date the contract had been lawfully annulled and that the necessary reletting had resulted in a loss to the Government of a very much larger sum.  Upon this showing it properly concluded that the amount due was more than offset by the loss resulting from reletting at a higher price.  How it might be if this objection had been seasonably made, it is not an error for which this court will reverse when not made until upon appeal.  In *Wisconsin Central Railroad* v. *United States*, 164 U. S. 190, 212, a like objection was made as to claims coming from the Court of Claims, and this court said:

"The petition sets forth, among other things, that the Postmaster General wrongfully and unlawfully withheld the $12,532.43 out of moneys due petitioner, which was, therefore, entitled to recover the full amount; and to each and every allegation of the petition the government interposed a general traverse.  It is now said that a counterclaim or set-off should have been pleaded, but the record does not disclose that this objection was raised below, while the findings of fact show that the entire matter was before the court for, and received, adjudication.  Moreover, it has been repeatedly held that the forms of pleading in the Court of Claims are not of so strict a character as to require omissions of this kind to be held fatal to the rendition of such judgment as the facts demand."

*Judgment affirmed.*