MARTIN v. IMBRIE et al.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 39.

1. ACTION ⨪22—BILL FOR SPECIFIC PERFORMANCE, BUT SEEKING DAMAGES, TO BE TREATED AS LAW ACTION.

A bill for specific performance of an alleged contract to purchase certain corporate stock and sell one-half to plaintiff, but really seeking damages for the refusal to sell half the stock to plaintiff, should have been treated as a common-law action for breach of contract.

2. JOINT ADVENTURES ⨪1—FOR INDEFINITE PERIOD TERMINATE AT WILL OF EITHER PARTY.

An arrangement for an indefinite period, under which defendants were to purchase corporate stock at a specified price for joint account of plaintiff and defendants, could be terminated at the will of either party.

3. JOINT ADVENTURES ⨪5(2)—EVIDENCE SUFFICIENT TO SHOW TERMINATION.

Evidence held to sustain a finding that defendants had terminated a contract for purchase of stock for joint account by notifying plaintiff of such termination.

⨪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. APPEAL AND ERROR ⊛═197(4)—OBJECTION THAT EVIDENCE WAS OUTSIDE ISSUE TOO LATE ON APPEAL.

In equitable action for specific performance of a contract for purchase of stock for joint account, where evidence regarding the termination of the contract was received without objection, the plaintiff cannot contend on appeal that the termination of the contract should have been pleaded.

5. APPEAL AND ERROR ⊛═171(3)—QUESTION NOT RAISED BELOW CANNOT BE CONSIDERED.

Where a case is tried below on a theory that a particular matter is within the issues, it cannot be contended on appeal that such matter was without the pleadings.

6. JOINT ADVENTURES ⊛═5(2)—TERMINATION OF CONTRACT PROVABLE UNDER GENERAL DENIAL.

In suit on contract for purchase of stock for joint account, a general denial authorized defendant to show that the contract had been terminated at the time of the transactions involved.

Appeal from the District Court of the United States for the Southern District of New York.

Bill for an accounting by George A. Martin against William Morris Imbrie and others copartners trading and doing business as William Morris Imbrie & Co. Decree for defendants, and complainant appeals. Affirmed.

Arthur N. Sager, of New York City (William A. Griffith, of Pittsburgh, Pa., of counsel), for appellant.

Rabenold & Scribner, of New York City (Mark Hyman and Allan R. Campbell, both of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. A bill of complaint filed by the appellant alleged that the appellees on the 14th of November, 1919, entered into a contract by the terms of which the appellees were to purchase common stock of the Cambria Fuel Company for the joint benefit of the parties to this litigation. This stock was to be purchased at a price not to exceed $10 per share. The appellant agreed not to purchase any of the stock, but to refer all the persons who offered any of the stock to him for purchase to the appellees, so that all purchases of this stock for the joint benefit of the parties, under the agreement, would be made through the appellees. It further alleges that certain purchases were made in the months of November and December, 1910, and further that during the years 1912 to 1916, appellees purchased common stock of the Cambria Fuel Company to the extent of 3,608 shares; that 2,500 shares of this stock were offered to the appellant, and he declined to purchase the same, and referred the seller to the appellees as probable purchasers of the stock. It is then alleged that, because of this agreement referred to, the appellees were the agents and trustees of the appellant, and that the appellant was ready and able to pay his share toward the purchase of said stock, and demanded that the appellees account for this stock as to any dividends paid, and directing that one-half the stock thus purchased be delivered over to the appellant upon payment of the

just and correct amount due and owing by the appellant. From the record, it does not appear that this stock was of a peculiar kind, or was not purchasable in the market. The appellant has proceeded for specific performance of a contract which deals merely with personal property. The relief he seeks really is money damages for the refusal to sell one-half of this stock to him, in addition to his share of the dividends as may have been declared. The contract is purely one of an agreement to sell stock or an interest in stock to the appellant, which, if broken, entitled the appellant to maintain an action for damages for breach of a simple contract. There could be no trust created as to this stock, unless the appellant had some property in the stock, as it was at the time in the custody of the appellees. The case was tried in equity, but should have been treated as a common-law action for breach of contract.

[1] Upon the merits of the claim, we are of the opinion that the court correctly decided against the claim of the appellant. The Cambria Fuel Company was a corporation organized under the laws of the state of Wyoming, with a capital stock of $2,000,000. Its business was mining coal and maintaining a general store and electric power plant near the mines; 1,500,000 of this stock was common stock of the par value of $10, and the agreement to purchase for the account of the appellant and appellees, made shortly prior to December 10, 1910, is not disputed. The agreement itself was oral. The fact of its existence has support in letters exchanged, indicating the purchase of stock for the joint or common account of the parties in the months of November and December, 1910. Upon the trial, such an agreement was not disputed. The appellees were bankers having an office in New York City. The appellant testified that in November, 1910, he called at the appellees' office and had an interview, which constitutes the agreement on which he seeks to maintain this action. Then and there it was agreed that common stock from time to time be purchased by the appellees as cheaply as it could be purchased, with a view of ultimately controlling the interests of the Cambria Fuel Company. All the common stock was to be divided as bought from time to time, and the appellant was to pay one-half of the purchase price and receive in return one-half of the stock. The price limit of the purchase was fixed at $10.

The appellees' claims do not materially differ from this version of the agreement. The appellant has not received one-half of the stock, nor paid therefor; that is, the purchases made beginning May 23, 1911, and ending April 25, 1916; and the reason therefor is asserted to be that this contract was terminated about January, 1911. The reason for the termination, as given, is that the appellant's partner was in charge of the funds, books, and offices of the Cambria Fuel Company, at Cambria, Wyo., being its secretary and treasurer during the year 1910. It was said unauthorized withdrawals were made from the funds of the Cambria Fuel Company, and unauthorized indebtedness incurred by one Law, a partner of appellant, and that these matters were called to the attention of the appellees, and resulted in an investigation by the directors of the Cambria Fuel Com-

pany. Report of this investigation was submitted at a directors' meeting on January 21, 1911, and a record thereof was made in the minutes of the company, resulting in a demand at the meeting for the resignation of the appellant's partner, Mr. Law. The appellant opposed this, and renominated Mr. Law as secretary and treasurer, and in the contest which ensued the appellant and his partner were defeated.

Then, the appellees testified, they told appellant they would give appellant no further interest in any purchase of said stock. They terminated the contract, and so stated on two or three occasions within a few weeks after January, 1911. This testimony was not refuted or denied by the appellant, and stands uncontradicted. The opportunity to make denial thereof was accorded the appellant, for he was present in court during the trial and after this testimony of the appellees was given. During this period from January 31, 1911, to March, 1916, the appellant did not institute a suit, nor even demand an accounting or damages. He did ask for a reconsideration of the appellees' decision to permit of no further interest for appellant in the purchases, and this they refused. The appellant states that he was refused information as to the purchases in 1912. The coal properties were of a speculative kind, with all the uncertainties of mines and markets; and the value of the stock was very uncertain, and subject to many contingencies. The war produced a high value for coal because of the shortage, and the prices thus obtained made the stock more valuable, and this undoubtedly gives rise to the present demands and this litigation.

[2] We are of the opinion that, assuming the appellant's version of the contract to be the truthful one, it was for an indefinite time and an arrangement which might be terminated at the will of either party. It could not be binding forever, and it was not an agreement that required mutual consent before its termination. Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135, 42 L. Ed. 484. In Marston v. Gould, 69 N. Y. 220, a similar arrangement was made for the purchase of stock for a joint account. No time was fixed for the operations. The court said:

"The arrangement could have been terminated at any time by the mutual consent of the parties, or at the option of either upon notice to the other. The connection was dissolvable at the will of either of the parties."

[3] The appellees exercised their right to dissolve the arrangement and terminate it as stated above, and the determination below of this question of fact has ample evidence to support it, and, indeed, stands uncontradicted in the record.

[4-6] The appellant contends that it was necessary for the appellees to plead a rescission of the contract, for this defense was open to them. The answer denied the existence of the contract. The issue then presented was whether there was a binding and enforceable contract at the time of the purchase of the stock in question. The evidence as to the termination of the contract was not objected to, and the question of pleading was not raised at the trial, either by objection or motion. Effect must therefore be given to the rule that

where the parties, with the assent of the court, united in trying a case on the theory that a particular matter is within the issues, that theory cannot be rejected when the case comes up for review. San Juan Light Co. v. Requena, 224 U. S. 89, 32 Sup. Ct. 399, 56 L. Ed. 680.

We are of the opinion that the theory of the appellant that a rescission should have been pleaded cannot now be presented upon this appeal. Huse v. U. S., 222 U. S. 496, 32 Sup. Ct. 119, 56 L. Ed. 285; Grant Bros. v. U. S., 232 U. S. 647, 34 Sup. Ct. 452, 58 L. Ed. 776. But, aside from this rule, we are of the opinion that, on a general denial, it was permissible for the appellees to prove that the contract was terminated at the time of the purchase of the stock in question.

The decree below is affirmed.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

