## ELBUKAN OIL CO. et al. v. LAMB.

(Circuit Court of Appeals, Eighth Circuit. April 13, 1926.)

No. 6904.

1. **Receivers ⇐⇒95—Insolvent corporation held under evidence to have had notice of application of receivers for authority to make contract or to have ratified contracts when made or to have abandoned question of want of notice.**

Insolvent corporation in hands of receivers and creditors *held* under evidence to have had notice of applications of receivers for authority to make contracts for drilling of test oil and gas well on leases belonging to corporation or to have ratified them when made, or to have abandoned question of notice on appeal from order overruling motion to set aside such contracts.

2. **Appeal and error ⇐⇒750(1)—Assignments of error on appeal from decrees overruling corporation's motion to set aside contracts made by receivers held insufficient to raise question whether contracts were in violation of statute (Act March 3, 1893 [Comp. St. §§ 1640–1642]).**

On appeal from decree denying corporation's motion to set aside contracts made by its receivers for drilling of test oil and gas well, assignments of error that no notice of receiver's application was given to corporation or creditors and that decrees were contrary to law *held* insufficient to present question whether contracts constituted a sale of leasehold rights without compliance with Act March 3, 1893 (Comp. St. §§ 1640–1642).

3. **Receivers ⇐⇒95—Contracts between receivers of corporation and one who agreed to drill test oil well in consideration of assignment of leasehold interests, held, on motion to set them aside, not so ambiguous as to be void.**

Contracts made by receivers of insolvent corporation for drilling of test oil and gas well in consideration of assignment of certain leasehold interests belonging to corporation, *held*, on motion to set them aside, not so ambiguous on their faces as to be void; there being no question as to their interpretation between the parties to them.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by B. W. Lemley and others against the Elbukan Oil Company and others, wherein C. B. White and others were appointed receivers of the corporate defendants' property. From decrees denying a motion of the named corporation and intervening creditors to set aside contracts made by receivers with Homer T. Lamb, that corporation and another appeal. Affirmed.

Clifton Williams, of Milwaukee, Wis., for appellants.

A. L. Berger, of Kansas City, Kan. (J. E. Thrift, of Sapulpa, Okl., and Dallas W. Knapp, of Coffeyville, Kan., on the brief), for appellee.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge. In the suit of B. W. Lemley et al. against the Elbukan Oil Company et al. in the United States District Court for the District of Kansas, C. B. White, C. V. Van Matre, and Henry M. Brown were, on January 12, 1923, appointed receivers of the property of the Elbukan Oil Company and M. T. C. Oil & Gas Company. At that time the Elbukan Oil Company was the owner of a number of oil and gas leases and pipe lines in Kansas and Oklahoma, and was producing and selling oil and natural gas, which natural gas was sold to consumers in and near Coffeyville, Kan. On May 29, 1923, on application of the receivers, an order was made by the court authorizing the receivers to enter into a contract with Homer T. Lamb, by which Lamb at his expense was to drill a deep test well for oil or gas upon a lease of the Elbukan Oil Company. In the contract the receivers were designated as parties of the first part, and Lamb as party of the second part. The contract recited that Lamb desired to obtain from the parties of the first part an assignment of certain oil and gas mining rights to certain lands in Montgomery county, Kan., and Nowata county, Okl., described in an exhibit made a part of the contract. It was provided in the contract that good and valid assignments of the said oil and gas leases should be placed in a bank named in the contract, to be by the bank held in escrow subject to the terms of the contract. The well was to be drilled at a point fixed in the contract within 60 days from the date the contract was authorized by the court. The contract provided that, if the second party found either oil or gas in paying quantities, the escrow agent was authorized to deliver said assignments to him.

The contract also contained the following provision:

"It is further understood and agreed that the lands involved herein, and covered or to be covered by the leases and assignments thereof herein referred to, shall be divided between the parties' hereto upon the plan commonly referred to as checkerboarding. In the division of said leases between the parties hereto, the following method shall be pursued: Party of the second part shall be entitled to the tract upon which the said first test well is drilled; parties of the first part shall have the right to choose outside of that tract 80 acres of land covered by said leases; then second party shall have the right to 80 acres to be selected by him; then the first parties shall have the right to select 80 acres, the parties hereto continuing to thus exercise their choice alternately by 80 acres until all lands involved shall have been thus divided and checkerboarded between the parties to this agreement.

"It is understood and agreed that there are other and additional lands upon which the parties hereto desire that oil and gas leases shall be obtained, and to that end it is agreed that first parties shall set about the obtaining of those leases and the geologists for party of the second part shall determine what leases shall be taken and parties of the first part shall take said leases in their names as receivers or in the other names as may be determined by first parties under the orders of said court. Such acreage shall be divided between the parties hereto as is hereinbefore provided respecting the division of other acreage. It is further agreed that the parties hereto and their employees and assistants will obtain said additional leases and that party of the second part will pay all actual and necessary expenses connected with said leases, the cash rental for such lands, however, not to exceed $1 per acre per annum, it being understood that no bonus above the $1 per acre for rental aforesaid is to be paid unless agreed to by party of the second part. Said second party is to pay all expenses of abstracts of title, examination of same, and, in fact, all expenses connected with the obtaining of said leases as herein provided, except the solicitation and procurement of the contracts themselves. First parties may procure at expense of second party abstracts of title on all such new and additional acreage."

On the 9th day of October, 1923, the court, upon a similar application, authorized the receivers to enter into a similar contract with Homer T. Lamb with reference to drilling a test well on their leases in Montgomery and Labette counties, Kan. The test wells were drilled and at least one producing well was brought in.

On April 11, 1924, the Elbukan Oil Company filed a motion to set aside the two contracts on the following grounds:

"I. As joint owner of the properties known as the Alloway field and the Kellar field involved in said applications and orders with reference to said Lamb contracts that

said corporations have permission to intervene at this time in this matter and contest as one of said joint owners, together with the other joint owner, the M. T. C. Oil & Gas Company, the validity of said contracts, by direct attack upon the same for the following reasons:

"(1) The said testimony referred to above, and the records and files in the above-entitled matter, show that there was no notice served upon either of said joint owning corporations which owned said property, or upon any of the creditors either before the applications for the orders permitting said contracts with said Lamb or afterwards, notifying any of them of said applications, and there was no notice served upon any of the same notifying them of any applications to confirm the said contracts between said receivers and said Lamb.

"(2) Because said testimony shows that the said Lamb approached the said receivers and sought from the leases which were attempted to be assigned to him, under circumstances which clearly show in said testimony that by the said contracts said Lamb attempted to procure above one-half of the leases in said fields under a pretended checkerboarding plan, and that said contracts were not entered into for the purpose of increasing the assets in the hands of the said receivers nor in providing funds with which to pay the creditors.

"(3) That the said testimony shows that the receivers accepted the geologists' reports which were produced by said Lamb, and the said receivers did not properly safeguard the interests of the corporations in that respect, all of which was known to said Lamb.

"(4) That, because said records show on their face and the said testimony shows that there was no checkerboarding map presented to the court at the time, the court was asked to approve said contracts.

"(5) Because said records and said testimony shows that at the time the court was asked to approve said contracts the court was only advised of the leases which the said receivers proposed to transfer to said Lamb under said contracts, and the court was not advised of the leases which the receivers proposed to keep, and the court was without facts upon which to base a decision as to the propriety of any checkerboarding plan or other division of the said property with said Lamb.

"(6) Because said testimony shows that there was an improper plan of division resorted to between said Lamb and said receivers, in that the plan resorted to was not in fact a checkerboarding plan and there was

nothing before the court in the form of a checkerboarding plan for its approval, and in fact the court did not approve any such plan for the division of the said properties.

"(7) And because said contracts with said Lamb attempted to convey to said Lamb in perpetuity valuable interests of these corporations and without any necessity therefor and attempted to convey to said Lamb in said contracts valuable properties without a sufficient consideration, in a contract that was proposed to exist in perpetuity even after the discharge of the receivers herein, all in violation of the rights of the owners and the creditors herein.

"(8) Because the said testimony shows that the said contracts were entered into without a sufficient or valuable consideration on the part of the said Lamb, in that the testimony shows that this corporation and its joint owner had acquired said properties from the State Line Gas Company, with an opinion of their officers, based upon geological surveys, to the effect that there was oil under the Mississippi limestone under said properties and the drilling of a test well by said Lamb under said circumstances was not a valuable or sufficient consideration for the valuable interests which the receivers attempted to convey to him under said contracts, and under the circumstances surrounding said receivership.

"(9) Because said contracts are so ambiguous as to be void in any event.

"II. And this defendant further moves the court for an order bringing said Lamb into this proceeding and requiring him to show cause why said contracts should not be cancelled for the reasons mentioned above herein.

"III. And this defendant further moves the court to issue a restraining order to be forthwith served upon said Lamb restraining and enjoining him from in any way disposing of any interests in said leases so as to prevent the acquiring of any interests therein by any innocent purchasers or other third parties.

"IV. This defendant further moves the court for an order to be served upon said Lamb requiring him to account to this receivership estate and to these owners for all of the profits derived by him under said contracts over and above the reasonable productive costs thereof.

"V. And this defendant further moves the court to cancel, and set aside said contracts entered into with said Lamb and to issue an order requiring said Lamb to turn back to this receivership estate and to these corporations all of the rights, titles, and interest acquired by him under said contracts."

Upon that motion, the court made an order requiring Homer T. Lamb to show cause why the contracts should not be set aside. Lamb filed his answer to the motion. Upon the motion and answer, a hearing was had and testimony taken. Upon the testimony the court overruled the motion. In overruling the motion, the court made the following findings:

"That the motion of the Elbukan Oil Company to set aside the two contracts made by the receivers with said Homer T. Lamb and the motion of George I. Bumbaugh, creditor, to intervene and participate in motion with the Elbukan Oil Company to set aside said contracts between the receivers and said Homer T. Lamb, and the creditors' intervening petition to set aside two contracts made by the receivers with said Homer T. Lamb, do not state any equity, are not sustained by the proof, and should be and are denied.

"The court further finds that heretofore, as shown by the order of the court, the receivers heretofore appointed in this cause, having charge, control, and possession of the property of said defendant, the Elbukan Oil Company, in due form made applications to this court for an order respecting the control of certain test wells, application for which was filed with the clerk and presented to the court on due notice to all parties interested in this cause and this property, including this defendant; and that a full and complete hearing was had before the court at said time, and the court having been well and fully satisfied, made certain orders authorizing said receivers to enter into certain contracts with said Homer T. Lamb, of Tulsa, Okl., for the drilling of deep test oil and gas wells, as set forth and provided in said application; that, pursuant to said order, the receivers heretofore appointed in this cause entered into said contracts with said Homer T. Lamb, as presented to this court, and upon execution of the same by said receivers and said Homer T. Lamb, the court made an order approving said contracts, a duplicate copy of which so approved, together with the order, is in the possession of said receivers and the said Homer T. Lamb; that, pursuant to the terms and provisions of said contracts, said receiver and said Homer T. Lamb checkerboarded said leases in accordance with the provisions of said contracts, and by checkerboarding they made division of said leases in accordance with the provisions of said contracts; that, pursuant to the terms of said contracts, said Homer T. Lamb proceeded to drill oil wells and expend large sums of money in carrying out said contracts, in good faith, and that, after drilling the first well, there was delivered to said Homer T. Lamb an assignment of interest in said leases, as contemplated and provided in the order of the court and the contracts thus made, and that, in carrying out the terms of said contracts, the said Homer T. Lamb was compelled to, and did, expend for capital investment in that particular field known as the 'Alloway Oil Field,' a total of $187,587.30; and that said expenditures were made, not only by said Homer T. Lamb, but jointly with the Red Bank Oil Company, which afterwards succeeded to certain interests of the said Homer T. Lamb; that in pursuance of said contracts, the provisions thereof and the order of the court, the said Homer T. Lamb and the Elco Petroleum Company, which succeeded to the rights of said Homer T. Lamb in the Kellar Oil Field, expended large sums of money with reference to the Kellar Oil structure, expending for capital investment in that field a total of $15,167.07; that the said Homer T. Lamb, acting in good faith and in pursuance of the terms and conditions of said contracts, made such expenditures as herein found, and relied upon the order of the court approving said contracts and authorizing the receivers in the making of the same.

"The court further finds that, by the terms of said contracts, said Homer T. Lamb was compelled to, and did, acquire additional acreage and leases, and did so at his own expense, and that, in checkerboarding said leases according to the terms of said contracts, there were assigned to said Homer T. Lamb and retained by the receivers for said defendant companies certain acreage, as follows: [Description omitted.]

"The court further finds that the contracts so made by said receivers with said Homer T. Lamb were of great benefit to the defendants the M. T. C. Oil & Gas Company and the Elbukan Oil Company, and that the making of the same greatly enhanced and increased the value of the companies' property; that said Homer T. Lamb, acting in good faith, and relying upon the order of the court and the contracts authorized and signed by the receivers, complied with the terms of said contracts in every particular, and, acting upon said contracts, did assign, transfer, and deliver all interests that he had in said Alloway field and the acreage received from said defendant companies and the receivers, to the Red Bank Oil Company, with headquarters in Tulsa, Okl., which assignments were duly executed to said Red Bank Oil Company on or about the 20th day of September, 1923; that said

assignments were made in good faith to said Red Bank Oil Company, of which, however, the said Homer T. Lamb is president; that the same were made for a valuable consideration, and that, as president of the said Red Bank Oil Company, said Homer T. Lamb has entered the appearance of said Red Bank Oil Company, as fully as though it had answered in this cause.

"The court further finds that said assignment, so made by the receivers to said Homer T. Lamb, were for sufficient and valuable consideration, and that the defendant corporations and all creditors have been greatly benefited by said contracts, and the properties have thereby been enhanced in value; all of which was known to the officers of the defendant companies, and is known by them, and that the said defendant companies have derived benefits therefrom.

"The court further finds that said assignments of leases to said Homer T. Lamb by the receivers, as authorized by said contracts, are approved, ratified, and made firm and effectual, and that the titles to said leases, as herein enumerated and so acquired by the respective parties, the Elbukan Oil Company and the M. T. C. Oil & Gas Company· and said Homer T. Lamb, are entitled to be made firm and effectual.

"The court further finds that said contracts and said leases assigned by the terms of said contracts are not subject to cancellation, and that the title so acquired to said leases by said Homer T. Lamb, by reason of said contracts and checkerboarding, and the assignments thereof, are made firm and effectual, and the action of said receivers is approved, affirmed and made permanent."

At the time the foregoing order was made, there was pending an application of the Elbukan Oil Company for the return to it of its property held by the receivers. The hearing on. that application was begun on April 28, 1924, the same day on which the order was made denying the motion to set aside the Lamb contracts and the hearing on such application was continued until May 13, 1924, to permit the completion of a report relative to the payment of the creditors of the Elbukan Oil Company. On the 13th of May, 1924, the court sustained the application of the Elbukan Oil Company for the return of its property. In that order the first two findings of the court are as follows:

. "(1) That the creditors of said defendant corporation, the Elbukan Oil Company, including those referred to as interim certificate holders, have each and all either been paid in full or their claims adjusted to their satisfaction by part payment in cash and balance by notes or other securities, or in some other manner as agreed on or arranged between them and the said corporation, and the receivers herein are acquitted and discharged of all responsibility to any such creditors, including said interim certificate holders, of said the Elbukan Oil Company.

"(2) That all acts and transactions of the receivers had, done, and performed, including all contracts heretofore made and entered into by them, are ratified, approved, and confirmed and the acceptance of the property by said company or its officers on its behalf as herein provided shall be a ratification, approval, and confirmation of all the acts, transactions, contracts, agreements, and engagements of said receivers of every kind and character, had, made, and performed by said receivers in the performance and discharge of their duties as such, and an acceptance of this decree on the bottom of the same and the assets and property by said the Elbukan Oil Company now in the possession of said receivers shall be a ratification, approval, and confirmation of this decree and all orders and decrees of this court, and same shall be observed, complied with, and carried out according to the terms and conditions thereof, so that said company shall accept said properties and the business and accounts of said receivership and of said corporation in the condition they are at this time and in the condition in which they are found when such corporate management may be resumed."

On the same day a similar order was made with regard to the property of the M. T. C. Oil & Gas Company, also in receivership with the same receivers.

On the 7th of October, 1924, the Elbukan Oil Company and the M. T. C. Oil & Gas Company appealed from the order denying the motion to cancel the Lamb contracts made on the 28th of April, 1924. The following errors. were assigned:

"(1) That the court erred in the first instance in permitting the receivers to enter into the contracts of May 28, 1923, and October 9, 1923, with Homer T. Lamb because no notice had been served upon the creditors nor the appellant corporations notifying them of the application for the order permitting said contracts.

"(2) The court erred in ordering said contracts to be entered into because said contracts were so ambiguous upon their faces as to be void.

"(3) The court erred ·in overruling the motions of the appellants to cancel and set aside said contracts, which said motions were

denied by decrees of May 1, 1924, filed May 3, 1924.

"(4) The said decrees complained of, which overruled said motions to set aside said contracts, are against the manifest weight of the evidence and are not supported by the evidence.

"(5) That said decrees are contrary to the law."

At the conclusion of the testimony on April 28, 1924, the attorney for one of the interveners, addressing the court, said:

"All we ask you to do is to have that contract carried out; our claim is that the leases have not been checkerboarded and we call upon the contract and the records of this court."

After the court had ruled orally on the motion, the attorney for the Elbukan Oil Company made the following request of the court:

"Will your honor permit me to dictate in a motion that we now proceed to checkerboard Exhibit A as the contract provides?"

At the foot of the decree of May 13, 1924, returning the property to the Elbukan Oil Company, appears the acceptance of that company as follows:

"Acceptance of Terms of the Above Decree by the Elbukan Oil Company.

"The Elbukan Oil Company, defendant above named, at a meeting of its board of directors, duly held on the 1st day of May, 1924, passed a resolution authorizing and directing William Seyler, as president of said company, as well as its attorneys of record in the above-entitled cause, to approve, ratify, and affirm the above and foregoing as the decree in this case, and by said resolution authorized its president and its attorneys of record to consent to the terms and provisions of said decree, a certified copy of which resolution is filed with the clerk, attached to this order and in accordance with said resolution, direction, and authority, the above and foregoing decree, and the provisions thereof, are approved, ratified and consented to by the president and attorneys for the—

"The Elbukan Oil Company,
"By William Seyler, President.
"L. P. Brooks,
"Clifton Williams,
"Attorneys for the Elbukan Oil Company."

That acceptance taken in connection with the request made at the hearing on April 28, 1924, admits of no other conclusion than that the legality of the Lamb contracts was conceded and that the only question now presented by the record is whether those contracts were carried out according to their terms or whether, in view of what had been done under those contracts by the parties thereto, those contracts should be set aside. It appears from the record that, on the day the motion was filed to set aside the contracts, April 11, 1924, the contracts had been executed in accordance with the interpretation put upon them by the parties thereto. No allegation of fraud was made by appellants in their motion, nor was any proof introduced or offered by them to show fraud.

Notwithstanding the fact that the record shows the controversy to be limited as stated, each of the five errors assigned will be considered in their order.

[1] The first error assigned is the alleged failure to serve notice upon creditors and appellants notifying them of the application for orders to enter into the contracts. As stated, there were two orders and two contracts. The first order was made on May 29, 1923, the second was made October 9, 1923. There was no testimony introduced by appellants to the effect that they did not have notice. There is the uncontradicted testimony of Mr. Brown, one of the receivers, that he had conversations with regard to the contracts with Mr. Seyler, the President of the Elbukan Oil Company. That testimony is as follows:

"Q. Mr. Brown, at the time and immediately after these contracts were made, you had a conversation with Mr. Seyler in which he spoke about the value of the contract, and so forth, and, if so, tell the court? A. I had several conversations with Mr. Seyler with reference to the contracts—not immediately after, I don't believe.

"Q. Well, at any time? A. I think must have been June or July.

"Q. What did he say about them? A. Well, at first he didn't approve. He seemed rather exercised about the contract at first until I went over the features of it with him that we have just discussed, that we gained additional acreage, in my opinion, if it did produce would materially enhance the value of the main properties.

"The Court: How much additional acreage did you gain? A. I can't say exactly. It is about 100 acres in the Alloway pool, is my recollection. And then after the well was completed he felt like I did; I thought he was very well satisfied."

According to this testimony, Mr. Seyler not only had notice, but he also acquiesced in and approved the contract. Moreover, neither in oral argument nor in his brief does the attorney for appellants insist that the record shows that appellants did not have

notice. With reference to the first error assigned, it appears that appellants either had notice of the applications of the receivers to make the contracts, or ratified them after they were made, or that they have abandoned the question of notice on this appeal.

[2] In connection with the first error assigned, the attorney for appellants in his brief states that the contracts constituted a sale by the receivers of the leasehold rights of the companies and the sale was made in violation of the Act of Congress of March 3, 1893, 27 St. at Large, 751 (sections 1640-1642, Comp. St.).

This contention was not set up in appellants' motion to set aside the contracts. No reference was made to it at the hearing on the motion. The judgment of the court was not sought on that point. No reference is made to it in the order of the court. It is not included in the errors assigned. It appears for the first time in the brief of the attorney for appellants filed in this case, and is there argued under the headings "First Assignment of Error" and "Fifth Assignment of Error."

As already shown, the first assignment relates to notice to appellants, and the fifth is "that the said decrees are contrary to the law." Neither of the two is sufficient to raise the question of a failure to advertise as required by the Act of March 3, 1893, in the absence of a showing in the record that the point was raised in the trial court. Virtue v. Creamery Mfg. Co., 227 U. S. 8, 33 S. Ct. 202, 57 L. Ed. 393; Thomas v. Taylor, 224 U. S. 73, 32 S. Ct. 403, 56 L. Ed. 673; Huse v. U. S., 222 U. S. 496, 32 S. Ct. 119, 56 L. Ed. 285; Lutcher, etc., Lumber Co. v. Knight, 217 U. S. 257, 30 S. Ct. 505, 54 L. Ed. 757; Boquillas Land Co. v. Curtis, 213 U. S. 339, 29 S. Ct. 493, 53 L. Ed. 822; Badger v. Ranlett, 106 U. S. 255, 1 S. Ct. 346, 350, 27 L. Ed. 194; Edwards v. Elliott, 21 Wall. 532, 537, 22 L. Ed. 487; Federal Mining & Smelting Co. v. Hodge, 213 F. 605, 609, 130 C. C. A. 197.

[3] The second assignment of error reads as follows:

"The court erred in ordering said contracts to be entered into, because said contracts are so ambiguous upon their faces as to be void."

Neither in oral argument nor in his brief, does the attorney for appellants indicate in what respect the contracts are ambiguous. In his brief, after making the statement of the proposition in accordance with the assignment of error above quoted, he cites a number of cases. An examination of those

cases shows that they are inapplicable. Some of them are cases which, upon suits for breach of contract, the contract was held void for want of mutuality. In one of the cases cited (Barnsdall Oil Co. v. Leahy, 195 F. 731, 733, 115 C. C. A. 521, 523), this court said:

"The purpose of every written agreement is to record the intention of the parties. The object of all construction is to ascertain what that intention was and to enforce it. The court should, so far as possible, put itself in the place of the parties when their minds met upon the terms of the agreement, and then from a consideration of the writing itself, of its purpose and of the circumstances under which it was made, endeavor to ascertain what they intended to agree to do, upon what sense and meaning of the terms they used their minds actually met."

In this case there is no doubt as to the intention of the parties to the contracts. They agreed as to the interpretation of the contracts, and they executed them in accordance with that interpretation. No fact was withheld from the court. The court was not imposed upon. Great benefit resulted to the property of the appellants. The receiverships grew out of the inability of appellees to meet their obligations. They could not even pay the amounts necessary to hold their undeveloped leases. Their property was about to be subjected to sale under executions. At the termination of the receivership their property was returned to them largely increased in value, and with their debts either paid, or so arranged that they could be met.

Without being specifically stated, the contention of appellants seems to be that the selection of lands provided for in the contracts should have been made after the completion of the wells, whereas such selection was made before the wells were commenced. The place of drilling was fixed by the contracts. Each side in making selections acted on its own judgment. No objection was made by appellants until after Lamb had expended large sums of money and had brought in valuable wells on the portion which had been allotted to him.

The third assignment of error reads as follows:

"The court erred in, overruling the motions of the appellants to cancel and set aside contracts, which said motions were denied by decrees of May 1, 1924, filed May 3, 1924."

This assignment of error may be considered in connection with the fourth assignment, which reads as follows:

"The said decrees complained of, which

overrule said motions to set aside said contracts, are against the manifest weight of the evidence, and are not supported by the evidence."

There was ample testimony to sustain the findings of the court and in overruling the motions.

The fifth assignment of error, which is "that said decrees are contrary to law," has already been considered.

We find no error in the decrees complained of and they are therefore affirmed.